HAINES LAW GROUP, APC
Paul K. Haines (SBN 248226)
Email: phaines@haineslawgroup.com
Tuvia Korobkin (SBN 286462)
Email: tkorobkin@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@haineslawgroup.com
2274 E. Maple Ave., Suite A
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

KILGORE & KILGORE, PLLC
John H. Crouch, IV (TX SBN 00783906) (pro hoc vice forthcoming)
E-mail: jhc@kilgorelaw.com
Christine A. Hopkins (SBN 240248)
E-mail: cah@kilgorelaw.com
3109 Carlisle St., Suite 200
Dallas, TX 75204
Tel: (214) 969-9099
Fax: (214) 953-0133

Attorneys for Plaintiff, the Classes, and
Aggrieved Employees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RAINOLDO GOODING, NADEEN GOODING, and MICHAEL LENTINI as individuals, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VITA-MIX CORPORATION, d.b.a. VITAMIX, and KELLY SERVICES, INC., <br><br> Defendants. | Case No.: 2:16-cv-3898 <br><br> CLASS AND COLLECTIVE ACTION COMPLAINT: <br><br> (1) FAILURE TO PAY OVERTIME WAGES (Cal. Labor Code §§ 204, 510, 558, 1194, 1198) <br><br> (2) FAIR LABOR STANDARDS ACT VIIOLATIONS (29 U.S.C. §201, et seq.); <br><br> (3) MINIMUM WAGE VIOLATIONS (Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197); <br><br> (4) MEAL PERIOD VIOLATIONS (Cal. Labor Code §§ 226.7, 512, 558); <br><br> (5) REST PERIOD VIOLATIONS (Cal. Labor |

**Class and Collective Action Complaint - 1**

) Code § 226.7, 516, 558);
)
) (6) WAGE STATEMENT PENALITES (Cal.
) Labor Code §226, et seq.);
)
) (7) WAITING TIME PENALTIES (Cal. Labor
) Code §§ 201 – 203)
)
) (8) UNFAIR COMPETITION (Cal. Bus. &
) Prof. Code §17200, et seq.)
)
) DEMAND FOR JURY TRIAL
) UNLIMITED CIVIL CASE

Plaintiffs Michael Lentini, Rainoldo Gooding and Nadeen Gooding ("Plaintiffs") on behalf of themselves and all others similarly situated, hereby bring this Class and Collective Action Complaint against Defendants Vita-Mix Corporation, d.b.a. Vitamix ("Vitamix"), and Kelly Services, Inc., (collectively referred to as "Defendants"), and in support thereof would show the Court as follows:

## JURISDICTION

1.     Plaintiffs, on behalf of themselves and all others similarly situated, hereby bring this class and collective action for recovery of unpaid wages and penalties under the Fair Labor Standards Act ("FLSA"), California Business and Professions Code §17200, *et. seq.*, California Labor Code §§ 201-203, 204, 226 *et seq.*, 510, 558, 1194, and 1198, *et seq.*, and California Industrial Welfare Commission Wage Order No. 1-2001 ("Wage Order 1"), in addition to seeking injunctive relief, declaratory relief and restitution.

2.     This Court has jurisdiction over Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216 and 28 U.S.C. § 1331 because the action asserts rights arising under federal law. This Court has supplemental jurisdiction over Defendants' violation of the Labor Code sections

**Class and Collective Action Complaint - 2**

set forth in the immediately preceding paragraph, California Business and Professions Code and Wage Order 1, because these claims derive from the same common nucleus of operative facts.

## VENUE

3.      Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred within this district.

## PARTIES

1.      Plaintiffs RAINOLDO GOODING and his wife, NADEEN GOODING, are individuals over the age of eighteen (18).  During the four year statute of limitations immediately preceding the filing of the Complaint in this action and within the statute of limitations periods applicable to each cause of action pled herein, Plaintiffs were employed by Defendants as misclassified non-exempt employees.  Plaintiffs were, and are, a victim of Defendants' policies and/or practices complained of herein, lost money and/or property, and have been deprived of the rights guaranteed to them by the FLSA, California Labor Code §§ 204, 226 *et seq.,* 510, 558, 1194, 1198, 2698 *et seq.*, California Business and Professions Code § 17200 *et seq.,* and Wage Order 7, which set employment standards for the retail sales industry.  Plaintiffs currently reside in Studio City, California, and have worked for Defendants in the Los Angeles area.

2.      Plaintiff MICHAEL LENTINI is an individual over the age of eighteen (18). During the four year period immediately preceding the filing of the Complaint in this action, Plaintiff was employed by Defendants as a misclassified non-exempt employee.  Lentini was employed by Defendants from approximately November 2014 through February 2016.  Lentini worked for Vitamix and Kelly Services in Texas, New Mexico, Colorado, Oklahoma, and Minnesota. He currently resides in California.

**Class and Collective Action Complaint - 3**

3.      Defendant VITA-MIX CORPORATION, d.b.a. Vitamix ("Vitamix") is a Delaware Corporation, with its principal place of business located at 8615 Usher Road, Olmsted Township, OH 44138.  It may be served through its registered agent for service of process within the State of California, Corporation Service Company, d.b.a. CSC Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.  Vitamix was Plaintiffs' *de facto* employer at all relevant times herein.

4.      Defendant KELLY SERVICES, INC. ("Kelly Services") is a Delaware corporation with its principal office listed with the Secretary of State as 999 West Big Beaver Road, Troy, MI 48084-4782.  It may be served through its registered agent for service of process, C T Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.  Kelly Services is a staffing agency and/or payroll company, and was the Plaintiffs' W-2 employer for tax purposes.

5.      Plaintiffs are informed and believe, and based thereon allege, that during the four years preceding the filing of the Complaint and continuing to the present, Defendants did and do business by providing in-store events, product demonstration services, and marketing services to Vitamix partners such as Costco Wholesale in Los Angeles County, California and the United States. Defendants employed Plaintiffs Rainoldo and Nadeen Gooding, and other, similarly situated employees within Los Angeles County and, therefore, were and are doing business in Los Angeles County and the State of California. Costco's web site shows nineteen Vitamix shows planned at Costcos in the Los Angeles region for March 2016 alone.

6.      Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants were licensed to do business in California and the Central District of California, and were the employers of Plaintiffs and the Classes (as defined below).

**Class and Collective Action Complaint - 4**

7.      At all times herein mentioned, each of said Defendants participated in the doing of the acts hereinafter alleged to have been done by the named Defendants; and each of them, were the agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned were acting within the course and scope of said agency and employment. Defendants, and each of them, approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

8.      At all times mentioned herein, Defendants, and each of them, were members of and engaged in a joint venture, partnership, and common enterprise, and were acting within the course and scope of and in pursuance of said joint venture, partnership, and common enterprise. Further, Plaintiff alleges that Defendants were joint employers for all purposes of Plaintiffs and all Class Members during the relevant periods.

## FACTUAL ALLEGATIONS

9.      In approximately November 2014, Lentini began working for Vitamix and Kelly Services, Inc., which were joint employers.  Plaintiffs Rainoldo and Nadeen Gooding have worked for Defendants for approximately three years.

10.      Vitamix is a manufacturer of household and commercial blenders and blending equipment, and its products are sold in all fifty states, and internationally. According to their corporate website, they have been in business for over 50 years, and they develop and produce the world's best performing and most reliable blending equipment. Their manufacturing facilities and corporate offices are both located in Ohio.

11.      Vitamix has annual sales of over $500 million, and employs thousands of workers.  A large portion of its sales are to retail stores, warehouse stores, and distributors, so

**Class and Collective Action Complaint - 5**

that a large portion of its sales are intended for resale.  Products from Vitamix are available for purchase at retail establishments including Williams Sonoma, Sur La Table, Bed Bath and Beyond, Macy's, Target, Best Buy, HEB, Military Base Exchanges, Restaurant Supply Stores, and membership only warehouse businesses such as Costco and Sam's Clubs.  Vitamix's products are also available for purchase online, and at direct shows including home and garden shows, boat shows, various trade shows, and home shopping networks such as QVC.

12.     Kelly Services was established in 1946, and is a publicly traded staffing company with annual revenues in excess of $5 billion dollars. It is headquartered in Michigan, and operates in all fifty (50) states.

13.     Vitamix currently hires roadshow demonstrators through Kelly Services, a payroll and/or "employee leasing" company, but directs and controls the employees for purposes of their promotional efforts.  Vitamix and Kelly Services have jointly employed over 700 roadshow demonstrators nationwide, including Plaintiffs.  Prior to 2013, Vitamix purported to retain roadshow demonstrators as "independent contractors", although such a classification is doubtful given the degree of control exercised by Vitamix.

14.     Vitamix roadshow demonstrators could be assigned to three different show types according to the Vitamix Sales Representative Manual at p. 71.  Demonstrators such as Plaintiffs were sent principally to warehouse clubs such as Costco Wholesale and Sam's Club (the "Wholesale Group").  The Wholesale Group would be sent to the Costco Wholesale or Sam's Club, be directed to set up a booth, and then man the booth during the store's open hours.  The warehouse clubs promoted their ability to sell in large quantities, presumably with the intention that a significant percentage of their sales be intended for resale.  Demonstrators would perform product demonstrations within the booth, but would not make any direct sales, or receive any

**Class and Collective Action Complaint - 6**

customer payments. Defendants did not pay demonstrators a salary or an hourly wage. Instead, Defendant paid its demonstrators a "per unit" rate based on the Vitamix blender sales that the hosting venue rang up at the cash register during the dates of the roadshow, less any returns received during the dates of the roadshow.  Many of the returns were not individually tracked for commission payments, so that compensation was frequently reduced by returns purchased before the road show began.  The road shows were as long as 20 days, or as short as 4 days. Plaintiff Lentini most commonly worked 17 day shows.

15.    According to the manual at page 71, Defendants also employed representatives who made direct sales at trade shows, fairs, expos, conventions, boat shows, and home shows (the "Direct Sales Group"). These individuals collected payments directly from purchasing customers, were provided credit card processing equipment, and, on information and belief, tracked returns, which were offset from commissions.

16.    According to the manual at page 71, Defendants further employed individuals who worked at retail venues such as Military Base Exchanges and Whole Foods (the "Retail Group").  Like the Wholesale Group, this group did not receive customer payments, and was paid based on register receipts less returns, regardless of whether the returns were paired to sales on roadshow demonstration days. Thus, the Retail Group and the Wholesale Group both performed promotional demonstrations and had their compensation calculated in the same way. In addition to his Wholesale Group demonstration assignments, Plaintiff Lentini was assigned to at least one Retail Group location, a military base in Oklahoma, for a 7 day show.

17.    Finally, although not mentioned in the manual given to demonstrators, Defendants occasionally employed some individuals to make product demonstrations to individuals in their homes (the "Home Sale Group").  These individuals made individual demonstrations, arranged

**Class and Collective Action Complaint - 7**

events like "Tupperware parties", took direct orders, and consummated sales directly with customers, including receiving payments. On information and belief, because they made sales directly to consumers, their returns were individually tracked, so that they could be offset against individual sales. It is believed that very few demonstrators were in the Home Sales Group, which required special application in order to be able to make such sales.

18. Representatives were not limited to one group, and could make sales in other groups. However, on information and belief, the vast majority of employees worked predominantly in the Wholesale and Retail Sales Groups.

19. Plaintiff Lentini worked extremely long hours during the road shows. Each show was typically, although not always, worked by only one representative, who would work in excess of seventy hours per week, and sometimes over eighty. Compensation earned varied from show to show, and sometimes amounted to less than minimum wage for time spent.

20. Because Plaintiff did not actually consummate any sales, but rather made promotional efforts for the benefit of Costco or other stores, and as a means to drive consumer traffic to Vitamix's website, the efforts of the Wholesale Group and the Retail Group were non-exempt promotional work. *See* 29 C.F.R. §541.503. Vitamix management frequently admitted that the principal beneficiaries of the demonstration work performed by Plaintiffs were Vitamix (due to promotional work increasing Vitamix's website traffic and Internet sales) and the hosting store. Because Defendants did not track returns, commissions were paid only on net store sales, and thus could reflect returns of merchandise purchased at other stores, or during a time period before a sales representative began work at a particular store. Thus, for example, Plaintiff Lentini actually had negative sales on his first day of work due to returns of merchandise paid for before

**Class and Collective Action Complaint - 8**

his promotional efforts began.  Plaintiff Lentini estimates that returns reduced demonstrator compensation by roughly 25%.

21.     On one occasion in November 2015, Plaintiff Lentini saw five blenders worth approximately $2,000 returned by a single Costco member.  Lentini was only able to investigate because he saw the returns waiting in a shopping cart at the membership desk, and was able to get a Costco manager to "pull an audit" on the returning customer's purchase history.  Lentini discovered the five blenders had been purchased two days before at another store, so that there was no justification for docking Lentini roughly $275 for the return.  Lentini was able to track 35 returns that he did not receive any commissions from during that same show, representing approximately $2,000 in compensation deductions.  Lentini complained to management about the deductions, and was told "sorry, that's the way it is, nothing can be done about that." When he complained again a couple of months later, he was told "Stop complaining, you made enough money," and "If you don't like it, go work somewhere else."

22.     Actual sales commonly resulted only after a shopper's persistent promotional exposure to Vitamix's products, because regular Costco and other retail shoppers typically do not come prepared to pay upwards of $600 to purchase what appears to be a standard blender.  According to Vitamix, consumers watch on average at least three live demonstrations spread over one year before purchasing a Vitamix blender.

23.     Not all products that demonstrators were directed to promote could even lead to commissions if the items were purchased at the hosting venue.  For example, during the fourth quarter of 2015, demonstrators were required to promote a $20 cookbook authored by Vitamix CEO Jodi Berg without payment of any commission on sales of the books.  When demonstrators inquired about this, they were told to promote the books "as a gesture of good will to the CEO,"

**Class and Collective Action Complaint - 9**

and to show Costco that the demonstrators "care more than just about making commissions." Lentini questioned why there was no compensation paid to him for promoting sales of the cookbook, and was specifically told: "Mike, are you kidding me?  We pay you enough. Don't be greedy."

24.     Another example occurred in the Spring of 2015, when Vitamix released the 5300 and 6500 models which required the use of "low profile jars" due to a manufacturing change. Although demonstrators had such jars in their inventory and demonstrated their use, Costco customers were directed to Vitamix customer service or Vitamix.com to purchase extra jars from Vitamix directly.  Plaintiffs were not compensated for promoting these "low profile jars."

25.     Plaintiffs were required to staff the booth at all times during regular host store hours.  For example, Costco hours were typically 10:00 a.m. to 8:30 p.m. on weekdays, 9:30 a.m. to 6:00 p.m. on Saturday, and 10:00 a.m. to 6:00 p.m. on Sundays.  Plaintiffs were required to be on premises and "demo ready" at least thirty (30) minutes before opening, and until after all the remaining customers are gone (the "push"), usually fifteen  to thirty (15-30) minutes after closing. Demonstrators were also required to purchase supplies and groceries to be used in the demonstrations.  Vitamix required the demonstrators to purchase necessary groceries outside of "demo ready" hours.  Plaintiff Lentini would regularly start his work day before 8:00 a.m. to purchase daily groceries for use in the demonstrations.  Demonstrators routinely stayed in the store more than one hour after closing to restock the booth and clean the demonstration area. This resulted in work days for single rep shows of at least 11.25 hours per day on weekdays, 9.25 hours on Saturdays, and 8.75 hours on Sundays, totaling approximately 74.25 hours per week just for store hours, and exceeding 80 hours per week when including shopping and cleaning time.  Plaintiffs were not allowed either lunch breaks or 15 breaks during the shows.

**Class and Collective Action Complaint - 10**

26.     Some shows were split between two representatives.  In such cases, representatives would be credited for store sales during the days they were present, and had reductions made for blenders returned during days they worked, regardless of when the purchase was made.

27.     Plaintiffs were also required to set up the booth on the day before the show, which included transporting the booth and all supplies to the workplace. This process took approximately five to ten hours.  Demonstrating at a roadshow required purchasing approximately $150 to $200 per day in produce and booth supplies, and would require many extra working hours over and above the scheduled operating hours of the host store. Most grocery and booth supply expenses were reimbursed, and the receipts were collected by Vitamix. The time-stamps of the receipts is evidence of when the days started since groceries needed to be purchased outside of store hours.  Booths were required to be "demo ready" until the "push" for Costco locations, and until the store closed in other locations.  Plaintiffs spent approximately three to six hours breaking down the booth at the end of the show.

28.     Additionally, Plaintiffs were not compensated for travel time to or from locations, but did have some of their travel expenses reimbursed through payment of a "per diem" when scheduled for overnight travel.  Demonstrators were commonly scheduled to do roadshow events that required overnight travel.  Travel time could easily take ten hours per day.  For example, in March 2015, Plaintiff Lentini drove to Houston for a 17 day roadshow. The day after the Houston roadshow was finished, he was required to drive 450 miles (approx. 8 hours) to Lawton, OK for a 7 day roadshow at Ft. Sill Military Base. The day after the Lawton, OK roadshow was finished, Lentini was required to drive back to Houston, TX to start another 17 day roadshow, so that he worked 41 consecutive days.  Lentini's compensation was less than minimum wage for

**Class and Collective Action Complaint - 11**

the week he worked in Lawton, OK, and when he asked Vitamix to pay him at least minimum wage for that 70+ hour week, he was told " your next show will easily make up for this."

29.     Defendants failed to accurately keep records of time worked for Plaintiffs, and their paychecks would normally simply record one "unit" for each day worked. Actual hours could easily exceed seventy (70) hours per week. Although Kelly Services purported to send e-mails with instructions to record hours, both Kelly Services and Vitamix instructed demonstrators to disregard these notices.  Demonstrators who attempted to log time online were re-directed to a Web page stating they cannot log their hours since they are not approved to record hours.  Nevertheless, actual time worked can be easily reconstructed from records of Costco or other vendor store hours of operation, due to the requirement that Plaintiffs tend to the booth at all material times during store hours. Time spent setting up or taking down booths can be reasonably estimated, and travel during normal work hours can be reconstructed from travel records or via reasonable estimates using mapping software.

30.     Plaintiffs in the Wholesale Group commonly had no control over whether the customers even could check out, as Costco and Sam's Club restrict sales to members only. Further, because until approximately June 19, 2016 Costco accepts only American Express, cash and debit cards in its stores, many members did not purchase high dollar items at the store, but rather bought online where they could use their credit cards.[1]  The Wholesale Group was not paid any commissions for such sales.  Vitamix paid the demonstrators $55 per net unit sold for the 5200/5300 model, and $75 per net unit sold for 6300/6500.  Demonstrators were paid approximately $17 for net accessory jar sales. Vitamix also required demonstrators to continuously promote Vitamix's website in an effort to drive sales directly to Vitamix, which

---

[1] Another road show demonstrator company estimated that only about 30% of Costco customers had an American Express card.  Costco online allowed use of other credit cards.

**Class and Collective Action Complaint - 12**

effectively cut out both the hosting venue and the demonstrator from receiving any compensation based on such sales.  Demonstrators were never compensated for any sales they steered towards Vitamix's website.  Prior to 2016, Vitamix commonly scheduled different employees to work subsequent shows in the same host store, and as a result, many sales derived from a demonstrator's previous promotional work would financially benefit other demonstrators. More recently, Vitamix began scheduling demonstrators in the LA area at the same stores.

31.     Vitamix management routinely threatened termination if employees went outside a Costco for any non-emergency reason during store hours. On information and belief, Vitamix's exclusive vendor contract with Costco specifies that the demonstration booth inside Costco has to be staffed at all times during Costco business hours. For example, in February 2016, Plaintiff Lentini left the Parker, Colorado store during business hours for approximately 25 minutes to purchase required groceries to do demonstrations.  He was reprimanded by Vitamix for going outside the store during Costco store hours by Travis Greenway.  Demonstrations were not permitted outside of the booths for any representatives working in the Wholesale or Retail Groups.

32.     The formula that Defendants used to compensate members of the Wholesale and Retail Groups sometimes resulted in payment of less than minimum wage. Members of the Wholesale and Retail Groups never received overtime wages at a rate of one-and-a-half times a regular hourly rate for work in excess of 40 hours per week. Members of the Wholesale and Retail Groups never received doubletime wages at a rate of two times a regular rate for work in excess of eight hours on the seventh consecutive day of work in a workweek.

33.     Lentini contacted Kelly Services on or about February 19, 2016, and was told by Chelsey that he was not entitled to overtime or minimum wage because he was paid on a

**Class and Collective Action Complaint - 13**

"commission only" basis.  Later the same day, Lentini was told that he was "non-exempt", and not a 1099 employee, but that he did not have an hourly rate, and was paid on a per unit basis. However, "piece rate" compensation would still require Defendants to comply with the FLSA and ensure that the minimum wage had been paid, and that overtime compensation is paid when due. *United States v. Rosenwasser,* 323 U.S. 360, 362 (1945); *see also*, 29 C.F.R. §778.111.

34.     Although not discussed by Kelly Services in its discussions with Lentini, it may be that Defendants classified the Wholesale and Retail Groups as "exempt" for purposes of the Fair Labor Standards Act and California law under the "Outside Sales Exemption."  Kelly Services so informed class members of this assertion in the Vitamix Demonstrator FAQ's form distributed to new hires during the class period, where it instructed them not to record their time, and noted the following:

> **The Employee Handbook has outlined how I must report my time. Does this apply to me?**
>
> No. The Vitamix program is very unique. In this "Outside Sales - Commission-only" assignment, Vitamix will be reporting commissions to KellyOCG, thereby eliminating the need to complete a timecard or enter pay information. There may be other instances in documentation/communications from Kelly that indicate that you are to report your time. Any references to time reporting are to be dismissed while on assignment with Vitamix.

For the reasons set forth below, the outside sales exemption does not apply to the Wholesale or Retail Groups, and its application to the Direct Sales Group is also doubtful.

35.     The FLSA provides an exemption to overtime and minimum wage requirements for "any employee employed … in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, …").  29 U.S.C. §213(a)(1).

36.     The Department of Labor has established rules defining the limits of the Outside Sales Exemption.  The General Rule provides:

**Class and Collective Action Complaint - 14**

**§541.500   General rule for outside sales employees.**

(a) The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the Act shall mean any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act, or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

(b) The term "primary duty" is defined at §541.700. In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

(c) The requirements of subpart G (salary requirements) of this part do not apply to the outside sales employees described in this section.

29 C.F.R. §541.500 (2015).  Section 3(k) of the Act provides:

(k) "Sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

29 U.S.C. 203(k).

37.   The Wholesale and Retail Groups engaged in promotional efforts and did not make "sales" within the definition of section 3(k) of the Act.

38.   Even if the Court were to indulge the presumption that  the Wholesale Group was "making sales" under the FLSA, the Outside Sales Exemption fails under the test in Section 541.500(a)(2), because the roadshow booths are deemed to be the Employers' place of business under FLSA rules.  DOL regulations provide:

**§541.502      Away from the employer's place of business.**

**Class and Collective Action Complaint - 15**

An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

29 C.F.R. §541.502.

39.     The booths from which the Wholesale, Direct Sales and Retail Groups make their presentations are a "fixed site." Vitamix pays or otherwise compensates Costco and other hosting venues to lease the booth space, and Vitamix exercises control over the manner in which the booths are set up and run.  Vitamix also keeps its booths in these fixed locations for the duration of its road shows, which commonly last 17-20 days, and will regularly have roadshows at the same hosting venue multiple times per year. Except for sales made through the Home Sale Group, Vitamix's demonstrators do not make sales at a customer's home or place of business. Members of the Wholesale and Retail Groups do not in fact make sales, but rather promote a product to benefit the sales of a third party hosting venue.  Indeed, the relationship between Defendants and the chains it operates through is so pervasive and of such a long duration, that Defendants refer to such host stores as Vitamix "partners" in their training manuals.  *See* Vitamix Sales Representative Manual at 71.  On information and belief, Vitamix's relationship with Costco has endured for approximately 14 years, and Defendants maintain a demonstrator presence in many Costco stores for approximately 60-100 days each year.

**Class and Collective Action Complaint - 16**

40.      Pursuant to long-standing rationales for exempting outside sales personnel, the Wholesale and Retail Groups have been misclassified.  As the court stated in *Jewell Tea Company v. Williams,* 118 F.2d 202, 207-08 (10th Cir. 1941):

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works [sic] individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

118 F.2d at 207-08.  The Wholesale, Direct Sales and Retail Group employees have little resemblance to this description.  Such employees do not set their own hours.  Instead, their hours are set by Defendants for the duration of grueling 17-20 day shows at fixed locations. Defendants know exactly what hours are expected to be worked from simply looking at the host store's schedule, because claimants must man the booth during open hours.  Even bathroom breaks are highly discouraged, and claimants are frequently contacted as a result of complaints from the host store if they take too long relieving themselves. In short, Defendants heavily control almost every aspect of the performance of claimants' job duties, and there is no reason to treat them as outside salesmen.

41.      Defendants are likewise unable to avail of the "retail sales exemption" under federal law, or the California equivalent.  In order to avail of the "retail sales exemption", Defendants would have to show that they were a "retail sales or service establishment."  That term is defined by Department of Labor Regulations as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." As a manufacturer, Vitamix is

**Class and Collective Action Complaint - 17**

not recognized as a "retail sales" or "service establishment" entity, and in any event, because it sells so many of its products to wholesale stores and other distributors for resale, it cannot qualify under the DOL regulations.

42.     Nor can Defendants avail themselves of the "commissioned employee" exemption under California law. Defendant Vitamix is principally a manufacturer under Wage Order 1-2001, and therefore cannot avail itself of the "commissioned employee" exemption available under California law for workers in the mercantile industry (Wage Order 7-2001) or those who work in "professional, technical, clerical, mechanical and similar occupations". (Wage Order 4-2001).  Even if Defendants could qualify under Wage Order 7 for retail sales, it is clear they have not complied with the California Supreme Court's decision in *Peabody v. Time Warner Cable, Inc.*, 59 Cal.4[th] 662, 174 Cal. Rptr. 3d 287, 328 P.3d 1028 (2014), which requires that Defendants assure that Plaintiffs have their "earnings exceed one and one-half times the minimum wage" for each pay period considered separately in order for the exemption to apply. Cal. Code Regs., tit. 8 §§ 11040(3)(D) & 11070(3)(D) (Wage Order Nos. 4 and 7, Section 3D).

43.     Defendants have previously been sued under California law, with a class action settlement being finalized by order dated January 21, 2016.  *See, Thomas v. Vita-Mix Corporation,* Cause No. 39-2014-00317104,CU-OE-STK, in the Superior Court of California, San Joaquin County.  The class in that case ran for the period from October 10, 2010 through August 26, 2015, and was limited to employees who performed work within the State of California during the class period (the "Thomas Class").

44.     Following the settlement in the *Thomas* case, Defendants attempted to address the problem of tracing returns to individual demonstrators by assigning California employees, including Plaintiffs Rainoldo and Nadeen Gooding, to one or two Costco stores or other display

**Class and Collective Action Complaint - 18**

venues. The permanent assignment of employees to particular stores makes it even more clear that the outside sales exemption does not apply.  Even the attempt to make returns traceable falls short of compliance with California law, because returns can be made to any Costco store, and returns can be made from purchases before any given in-store promotion demonstration.  Returns from online purchases can also be made to the hosting venues in many stores, including Costco locations.

## CLASS ALLEGATIONS

45.     Plaintiff files this case as an "opt-in" collective action as specifically allowed by 29 U.S.C. § 216(b). The **FLSA Overtime Class** that Plaintiffs seek to represent are:

> All individuals who are or were employed by Vita-Mix Corporation and/or Kelly Services as a Demonstrator to at any time from June 3, 2013 until the present and who worked in the "Wholesale Group" or "Retail Group" on at least one occasion. Specifically excluded from the collective action are any employees who Defendants can affirmatively show spent more than twenty percent of their working days making direct sales at trade shows, fairs, expos, conventions, and home shows (the "Direct Sales Group") and/or selling directly to consumer as part of the Home Sales Program (the "Home Sales Group"), and any employees who were members of the Thomas Class, and who have not worked for Defendants since August 27, 2015.

Plaintiff seeks to represent only those members of the above-described group who, after appropriate notice of their ability to opt in to this action, have provided consent in writing to be represented by the Plaintiffs as required by 29 U.S.C. § 216(b).

46.     This action is appropriate for collective action status because Defendants have acted in the same manner with regards to all members of the Plaintiff class by misclassifying

**Class and Collective Action Complaint - 19**

them as exempt employees, and failing to pay them overtime, doubletime, and/or the minimum wage.

47.     Plaintiffs Rainoldo and Nadeen Gooding further bring this action on behalf of themselves and the following Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure for violation of California state law since August 27, 2015:

a.  The **California Overtime Class** consists of all Defendants' current and former employees in the FLSA Class who worked in California since August 27, 2015, who were classified as exempt, and were not paid overtime, doubletime, or minimum wage, during the four years immediately preceding the filing of the Complaint through the present.

b.  The **Minimum Wage Class** consists of (a) all of Defendants' current and former  employees who were classified as exempt, and worked at least one shift in California, during the period from August 27, 2015 through the present.

c.  The **Meal Period Class** consists of all Defendants' current and former employees within the California Overtime Class who worked at least one shift in California since August 27, 2015 and, worked within the State of California (a) more than five hours in duration, and/or (b) more than ten hours in duration.

d.  The **Rest Period Class** consists of all Defendants' current and former employees in California within the California Overtime Class who were classified as exempt and who, since August 27, 2015, worked at least one shift within the State of California for (a) more than six hours, but less than eight

**Class and Collective Action Complaint - 20**

hours, but were not provided with two paid rest periods, and/or (b) more than ten hours, and were not provided with three paid rest periods.

   e. The **Wage Statement Penalty Class** consists of members of the California Overtime Class, the Minimum Wage Class, the Meal Period Class, and/or the Rest Period Class during the one year immediately preceding the filing of the Complaint through the present who did not receive wage statements and/or wage calculations as required under California law.

   f. The **Waiting Time Penalty Class** consists of members of the California Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class who worked at least one shift in California since August 27, 2015, and who separated their employment with Defendants during the period from August 27, 2015 to the present.

48.   **Numerosity:** The members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable. The membership of the classes and subclasses are unknown to Plaintiff at this time; however, it is estimated that the Classes number greater than three hundred (300) individuals as to each Class. The identity of such membership is readily ascertainable via inspection of Defendants' employment records.

49.   **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated employees, which predominate over questions affecting only individual members including, without limitation:

   a. Whether Defendants misclassified their employees as exempt under the FLSA;

**Class and Collective Action Complaint - 21**

b.   Whether Defendants violated the FLSA by failing to pay for overtime and/or minimum wage under the FLSA;

c.   Whether Defendants violated the applicable Labor Code provisions including, but not limited to §§ 510 and 1194 by requiring overtime work and not paying for said work according to the overtime laws of the State of California;

d.   Whether Defendants allowed proper meal periods, or in the alternative, correctly computed and paid meal period premium payments at the correct rate of pay for work performed in California;

e.   Whether Defendants allowed proper rest periods, or in the alternative, correctly computed and paid rest period premium payments at the correct rate of pay for work performed in California;

f.   Whether Defendants' wage statements conformed to the requirements of Labor Code §226(a) and;

g.   Whether Defendants paid their employees all wages owed upon termination or resignation as required by §§ 201-203

50.   **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendants' policies and/or practices applicable to each individual class member, such as their uniform method of calculating overtime payments for the members of the California and FLSA Overtime Classes. As such, these common questions predominate over individual questions concerning each individual class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

**Class and Collective Action Complaint - 22**

51.     **Typicality:** The claims of Plaintiffs are typical of the claims of the Classes because Plaintiffs were employed by Defendants as demonstrating employees in California and other stated areas within the United States during the last four years. As alleged herein, Plaintiffs, like the members of the Classes, were deprived of all overtime and premium wages, and were provided with insufficient leave time.

52.     **Adequacy of Representation:** Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent the members of the Classes and Plaintiffs. Plaintiffs' attorneys have prosecuted and defended wage-and-hour class actions in federal courts in the past and are committed to vigorously prosecuting this action on behalf of the members of the Classes.

53.     **Superiority:** The California Labor Code is broadly remedial in nature and serves an important public interest in establishing minimum working conditions and standards in California. Similarly, the FLSA is remedial in nature and serves an important public interest in establishing minimum working conditions and standards through the United States. These laws and labor standards protect the average working employee from exploitation by employers who have the responsibility to follow the laws and who may seek to take advantage of superior economic and bargaining power in setting onerous terms and conditions of employment. The nature of this action and the format of laws available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each employee were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual plaintiff with their vastly

**Class and Collective Action Complaint - 23**

superior financial and legal resources. Moreover, requiring each member of the Classes to pursue an individual remedy would also discourage the assertion of lawful claims by employees who would be disinclined to file an individual action against their former and/or current employer for real and justifiable fear of retaliation and permanent damages to their careers at subsequent employment. Further, the prosecution of separate actions by the individual Class Members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class Members against Defendants herein; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal determinations with respect to individual Class Members which would, as a practical matter, be dispositive of the interest of the other Class Members not parties to adjudications or which would substantially impair or impede the ability of the Class Members to protect their interests. Further, the claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

54.     As such, the Rule 23 Classes identified in Paragraph 30 are maintainable as a Class under Rule 23(b)(1) and/or Rule 23(b)(3).

## FIRST CLAIM

### FAILURE TO PAY OVERTIME WAGES REQUIRED
### BY THE CALIFORNIA LABOR CODE

(Against All Defendants)

55.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

56.     Defendants either knowingly failed to pay Plaintiffs and the California Overtime Class in the Wholesale and Retail Groups overtime despite acknowledging their non-exempt

**Class and Collective Action Complaint - 24**

status or willfully misclassified Plaintiffs and the California Overtime Class in the Wholesale and Retail Groups as exempt under the Outside Sales Exemption.  This exemption, which is more narrowly defined under California law than under federal law, was improperly applied because Plaintiffs and the class members were principally engaged in promotional work, and because they were engaged in work at their employer's place of business, rather than promoting to consumers at their homes, or to businesses at their place of business.

57.     This cause of action is brought on behalf of the California Overtime Class pursuant to Labor Code §§ 204, 510, 558, 1194, and 1198, which provide that hourly non-exempt employees are entitled to all overtime and doubletime wages and compensation for hours worked, and provide a private right of action for the failure to pay all overtime and doubletime compensation for overtime work performed.

58.     Plaintiffs and members of the California Overtime Class worked overtime and doubletime hours and were not paid a premium overtime or doubletime rate, because they were improperly classified as exempt.

59.     At all times relevant herein, Defendants were required to properly compensate hourly non-exempt employees, including Plaintiff and members of the California Overtime Class, for all overtime hours worked pursuant to California Labor Code § 1194 and Wage Order 1-2001. Wage Order 1, § 3 requires an employer to pay an employee "one and one-half (1½) times the employee's regular rate of pay" for work in excess of 8 hours per work day and/or in excess of 40 hours of work in the workweek. Wage Order 1, § 3 also requires an employer to pay an employee double the employee's regular rate of pay for work in excess of 12 hours each work day and/or for work in excess of 8 hours on the seventh consecutive day of work in the workweek.

**Class and Collective Action Complaint - 25**

60.     Defendants' policy and practice of requiring overtime work and not paying at the proper overtime and doubletime rates for said work violates California Labor Code §§ 204, 210, 510, 558, 1194, and 1198, and Wage Order 1.

61.     The foregoing policies and practices are unlawful and create an entitlement to recovery by Plaintiffs and members of the California Overtime Class in a civil action for the unpaid amount of overtime premiums owing, including interest thereon, statutory penalties, civil penalties, attorney's fees, and costs of suit according to California Labor Code §§ 204, 210, 510, 558, 1194, 1198, 2698 et seq., and Code of Civil Procedure § 1021.5.

## SECOND CLAIM

## FLSA VIOLATIONS

(Against All Defendants)

62.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

63.     This cause of action is brought pursuant to 29 U.S.C. § 207, which requires employers to pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked in excess of 40 per workweek, as well as minimum wage.

64.     Plaintiffs and members of the FLSA Overtime Class worked in excess of 40 hours per workweek, earned but were not paid overtime compensation, and received various forms of incentive pay, which are not exclusions when calculating the regular rate of pay.

65.     As a result of a policy or practice, Plaintiffs have been systematically misclassified as exempt under the Outside Sales Exemption, or under other exemptions. Thus, Defendants have failed to properly calculate and pay Plaintiffs and the FLSA Overtime Class

**Class and Collective Action Complaint - 26**

members one and one-half times the regular rate of pay for all hours worked in excess of 40 per workweek.

66.     Defendants' policy and practice of requiring overtime work and not paying at the proper overtime rate for said work violates the FLSA's overtime requirements including, but not limited to 29 U.S.C. § 207.

67.     Defendants' policies and practices, as alleged, constitute a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

68.     Defendants' policy and practice of failing to pay overtime for Plaintiffs and members of the FLSA Overtime Class creates an entitlement to recovery by Plaintiffs and members of the FLSA Overtime Class in a civil action for the unpaid amount of overtime premiums owing, including liquidated damages, attorneys' fees and costs, per 29 U.S.C. § 216 and interest thereon.

**THIRD CLAIM**

**<u>MINIMUM WAGE VIOLATIONS</u>**

(Against All Defendants)

69.     Plaintiffs re-allege and incorporate the foregoing paragraphs as if fully set forth herein. Wage Order No. 1, § 4 and California Labor Code §§ 1197 and 1182.12 establish the right of employees to be paid minimum wages for all hours worked, in amounts set by state law. Labor Code §§ 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage as required by Labor Code § 1197 may recover the unpaid balance together with attorneys' fees and costs of suit, as well as liquidated damages in an amount equal to the unpaid wages and interest accrued thereon.

**Class and Collective Action Complaint - 27**

70.     At all relevant times herein, Defendants failed to conform their pay practices to the requirements of the law by failing to pay Plaintiffs and the Minimum Wage Class for all hours worked, including, but not limited to, all hours they were subject to the control of Defendants and/or suffered or permitted to work under the California Labor Code and applicable Industrial Welfare Commission wage order(s), as a result of their misclassification of these employees.

71.     California Labor Code § 1198 makes unlawful the employment of an employee under conditions that the IWC prohibits.  California Labor Code §§ 1194(a) and 1194.2(a) provide that an employer who has failed to pay its employees the legal minimum wage is liable to pay those employees the unpaid balance of the unpaid wages as well as liquidated damages in an amount equal to the wages due and interest thereon.

72.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and the Minimum Wage Class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and they are entitled to recover economic and statutory damages and penalties and other appropriate relief as a result of Defendants' violations of the California Labor Code and applicable IWC Wage Orders.

73.     Defendants' practice and uniform administration of corporate policy regarding illegal employee compensation is unlawful and creates an entitlement to recovery by Plaintiffs and members of the Class in a civil action for the unpaid amount of minimum wages, liquidated damages, including interest thereon, statutory penalties, civil penalties, attorneys' fees, and costs of suit according to California Labor Code §§ 204, 210, 216, 558, 1194 *et seq*., and 1198; and Code of Civil Procedure § 1021.5.

**Class and Collective Action Complaint - 28**

74.     As a consequence of Defendants' non-payment of minimum wages, Plaintiff and members of the Minimum Wage Class seek penalties pursuant to the IWC Wage Order No. 1 § 20(A) and California Labor Code § 1199; interest pursuant to California Labor Code §§ 218.6 and 1194 and Civil Code §§ 3287 and 3289; liquidated damages pursuant to California Labor Code § 1194.2; attorneys' fees and costs of suit pursuant to California Labor Code § 1194 *et seq.*; and damages and/or penalties pursuant to California Labor Code § 558(a)

## FOURTH CLAIM

## MEAL PERIOD VIOLATIONS

### (Against All Defendants)

75.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

76.     Employers are required to provide employees working within the State of California for a period of more than five hours with "off-duty" meal breaks which comply with the following requirements: (1) The employer must relieve the employee of all duty; (2) the employer must relinquish control over all activities of the employee; (3) the employer must permit a reasonable opportunity to take an uninterrupted 30-minute break; and (4) the employer must not impede or discourage the employee from taking their 30-minute breaks. *Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004 (2012).

77.     The law requires that: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." California Code of Regulations, Title 8, §11040.

**Class and Collective Action Complaint - 29**

78.     As a matter of policy and practice, Defendants failed to provide the requisite meal period(s) for members of the Meal Period Class by forcing them to remain at their booths during the entire time that the hosting stores were open, which always exceeded five hours, and commonly exceeded ten hours.

79.     The foregoing policies and practices are unlawful and create an entitlement to recovery by Plaintiffs and members of the Meal Period Class in a civil action for the unpaid amount of meal period payments owing, including interest thereon, statutory penalties, civil penalties, attorney's fees, and costs of suit according to California Labor Code §§ 210, 226.7, 512, 516, 558, and Civil Code §§ 3287(b) and 3289.

## FIFTH CLAIM

## REST PERIOD VIOLATIONS

(Against All Defendants)

80.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

81.     Wage Order 1-2001, § 12 and California Labor Code §§ 226.7, 516 and 558 establish the right of employees to be provided with a rest period of at least ten (10) minutes for each four (4) hour period worked, or major fraction thereof.

82.     Plaintiffs are informed and believe that Defendants failed to make rest periods available to non-exempt employees and maintained an unlawful, class-wide rest period policy by failing to provide suitable rest periods.

83.     As a result of Defendants' failure to make rest periods available to non-exempt employees and unlawful, class-wide rest period policy that fails to provide all required rest periods, as it fails to provide rest periods as required by the Wage Order, Plaintiffs and members

**Class and Collective Action Complaint - 30**

of the Rest Period Class were not provided with all rest periods to which they were entitled under California law. Despite Defendants' violations, Defendants did not pay an additional hour of pay to Plaintiffs and the Rest Period Class at their regular rate of pay as required by Labor Code section 226.7.

84.     The foregoing policies and practices are unlawful and create an entitlement to recovery by Plaintiffs and members of the Rest Period Class in a civil action for the unpaid amount of rest period premiums owing, including interest thereon, statutory penalties, civil penalties, attorney's fees, and costs of suit according to California Labor Code §§ 226.7, 516, 558, and Civil Code §§ 3287(b) and 3289.

**SIXTH CLAIM**

**<u>WAGE STATEMENT PENALTIES</u>**

(Against All Defendants)

85.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

86.     Plaintiffs are informed and believe, and based thereon allege that, Defendants knowingly and intentionally, as a matter of uniform policy and practice, failed to furnish them and members of the Wage Statement Class with accurate and complete wage statements regarding their correct time worked, regular rates of pay, rates of overtime pay, corresponding hours worked at each rate of pay, correct meal period premium payments, total gross wages earned, and total net wages earned, in violation of Labor Code § 226.

87.     Under California law, employers are prohibited from making deductions to employee commissions or other compensation for losses that are beyond the control of the employee.  Commission deductions for products that are returned within a certain period of time

**Class and Collective Action Complaint - 31**

are generally permissible if it is possible to identify the specific commission at issue and the employee who received that commission. This principle is codified in Section 8 of the Wage Orders, which provides: "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee."  The California Supreme Court has expressly held that an employer may not dock individual commissions for returns that cannot be traced to the sales person who sold the original item.  *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109 (1995).

88.     Defendants, however, impermissibly deducted monies from commissions due Plaintiffs by deducting returns uncoupled to promotional events, by mixing returns for tandem shows, and/or by deducting returns to the store for products sold at other stores.

89.     Defendants' failure to furnish Plaintiffs and members of the Wage Statement Class with complete and accurate itemized wage statements resulted in actual injury, as said failures led to, among other things, the non-payment of all their overtime wages, meal and rest period payments, improper commission deductions, and deprived them of the information necessary to identify the discrepancies in Defendants' reported data.

90.     Defendants' failures creates an entitlement to recovery by Plaintiff and members of the Wage Statement Class in a civil action for all damages and/or penalties pursuant to Labor Code § 226, including statutory penalties, civil penalties, reasonable attorney's fees, and costs of suit according to California Labor Code §§ 226 and 226.3.

**Class and Collective Action Complaint - 32**

**SEVENTH CLAIM**

**WAITING TIME PENALTIES**

(Against All Defendants)

91.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

92.     This claim is brought pursuant to Labor Code §§ 201-203 which require an employer to pay all wages immediately at the time of termination of employment in the event the employer discharges the employee or the employee provides at least 72 hours of notice of his/her intent to quit.  In the event the employee provides less than 72 hours of notice of his/her intent to quit, said employee's wages become due and payable not later than 72 hours upon said employee's last date of employment.

93.     Defendants failed to timely pay Plaintiffs and members of the Waiting Time Class all of their final wages at the time of termination which includes, among other things, overtime wages, rest period premiums, and meal period premiums.  Further, Plaintiffs are informed and believe, and based thereon allege, that as a matter of uniform policy and practice, Defendants continue to fail to pay members of the Waiting Time Class all earned wages at the end of employment in a timely manner pursuant to the requirements of Labor Code §§ 201-203.  Defendants' failure to pay all final wages was and is willful within the meaning of Labor Code § 203.

94.     Defendants' wilful failure to timely pay Plaintiffs and members of the Waiting Time Class their earned wages upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due.  Therefore, Plaintiffs and

**Class and Collective Action Complaint - 33**

members of the Waiting Time Class are entitled to compensation pursuant to Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

## EIGHTH CLAIM

## <u>UNFAIR COMPETITION</u>

(Against All Defendants)

95.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

96.     Defendants have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California Business and Professions Code § 17200 *et seq*., by: (a) failing to pay Plaintiff and members of the FLSA Overtime Class and the California Overtime Class all overtime wages owed; (b) failing to pay Plaintiff and members of the Minimum Wage Class the minimum wage; (c) failing to pay Plaintiff and members of the Meal Period Class and Rest Period Class all meal and rest period premium wages owed; and (d) knowingly failing to furnish Plaintiffs and members of the Wage Statement Class with accurate, lawful and complete wage statements in violation of Labor Code § 226 and benefitting from unlawful deductions taken from Plaintiffs as a result.

97.     Defendants' utilization of these unfair and/or unlawful business practices deprived the Plaintiffs and continues to deprive members of the Classes of compensation to which they are legally entitled, constitutes unfair and/or unlawful competition, and provides an unfair advantage over Defendants' competitors who have been and/or are currently employing workers and attempting to do so in honest compliance with applicable wage and hour laws.

98.     Because Plaintiffs are victims of Defendants' unfair and/or unlawful conduct alleged herein, Plaintiffs, for themselves and on behalf of the members of the Classes, seeks full

**Class and Collective Action Complaint - 34**

restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants pursuant to Business and Professions Code §§ 17203 and 17208.

99.     The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

100.     Plaintiffs were compelled to retain the services of counsel to file this court action to protect their interests and those of the Classes, to obtain restitution, and to enforce important rights affecting the public interest.  Plaintiffs thereby incurred the financial burden of attorney's fees and costs, which they are entitled to recover under Code of Civil Procedure § 1021.5.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment for themselves and for all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1. For an order certifying the proposed Classes;

2. For an order appointing Plaintiffs as representatives of the Classes;

3. For an order appointing Counsel for Plaintiff as Counsel for the Classes;

4. Upon the First Claim, for compensatory, consequential, general and special damages according to proof pursuant to Labor Code §§ 204, 510, 558, 1194, and 1198;

5. Upon the Second Claim, for compensatory, consequential, liquidated, general and special damages pursuant to 29 U.S.C. §§ 207 and 216;

6. Upon the Third Claim, for payment of minimum wages, liquidated damages, and penalties according to proof pursuant to Labor Code §§ 1182.12, 1194, 1194.2 and 1197;

**Class and Collective Action Complaint - 35**

7. Upon the Fourth Claim, for compensatory, consequential, general and special damages according to proof pursuant to Labor Code §§ 226.7, 512, 516, and 558;

8. Upon the Fifth Claim, for compensatory, consequential, general and special damages according to proof pursuant to Labor Code §§ 226.7 and 558;

9. Upon the Sixth Claim, for statutory penalties pursuant to Labor Code §226 and recovery of unlawful deductions;

10. Upon the Seventh Claim, for statutory waiting time penalties pursuant to Labor Code §203;

11. Upon the Eighth Claim, for restitution to Plaintiffs and members of the Classes of all money and/or property unlawfully acquired by Defendants by means of any acts or practices declared by this Court to be in violation of Business and Professions Code § 17200 *et seq.;*

12. Prejudgment interest on all due and unpaid wages pursuant to California Labor Code §218.6 and Civil Code §§3287 and 3289;

13. On all causes of action, for attorney's fees and costs as provided by Labor Code §1194 *et seq.*, the FLSA, and Code of Civil Procedure §1021.5; and

14. For such other and further relief the Court may deem just and proper.

Dated: June 3, 2016                           Respectfully submitted,

                                              KILGORE & KILGORE, PLLC

                                              By:  /s/ *Christine A. Hopkins*
                                                   JOHN. H. CROUCH, IV[2]
                                                   TX State Bar No. 00783906
                                                   jhc@kilgorelaw.com
                                                   CHRISTINE A. HOPKINS
                                                   CA State Bar No. 240248
                                                   cah@kilgorelaw.com

                                              KILGORE & KILGORE, PLLC
                                              3109 Carlisle, Suite 200
                                              Dallas, Texas 75204
                                              (214) 969-9099 – Telephone
                                              (214) 953-0133 – Facsimile

                                              **ATTORNEYS FOR PLAINTIFFS,
                                              THE CLASSES, AND
                                              AGGRIEVED EMPLOYEES**


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury with respect to all issues triable by jury.

Dated: June 3, 2016                           /s/ *Christine A. Hopkins*
                                              Christine A. Hopkins

---

[2] Mr. Crouch will be submitting a Motion for Admission Pro Hac Vice shortly.

**Class and Collective Action Complaint - 37**