# United States District Court
# Central District of California

| | |
|---|---|
| RAINOLDO GOODING and NADEEN GOODING, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>VITA-MIX CORPORATION and KELLY SERVICES, INC.,<br><br>                Defendants | Case No. 2:16-cv-03898-ODW(JEMx)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND GRANTING LEAVE TO FILE AN AMENDED COMPLAINT [54]** |

## I. INTRODUCTION

This is a wage-and-hour class action suit against Defendants Vita-Mix Corporation ("Vita-Mix") and Kelly Services, Inc. ("Kelly Services") (collectively, "Defendants"). Named Plaintiffs and proposed class members work for or worked in the past for Vita-Mix, and they allege that Vita-Mix misclassified their employee designations and failed to pay them overtime wages and other benefits. (*See generally* Compl., ECF No. 1.) At the end of 2016, the parties reached a settlement on behalf of the class, and Plaintiffs now move for class certification and preliminary approval of that settlement. (ECF No. 54.) Both Defendants have filed notices of non-opposition to the settlement. (ECF Nos. 55, 56.) For the reasons discussed below, the Court **GRANTS** the motion for class certification and preliminarily **APPROVES** the class settlement.

## II. BACKGROUND

The basics of the putative class and the proposed settlement are outlined below.

### A. Factual Background

Vita-Mix is a manufacturer of household and commercial blenders, and Kelly Services is a payroll and "employee leasing" company that jointly employs individuals with Vita-Mix. (Compl. ¶¶ 11–13.) Named Plaintiffs Rainoldo and Nadeen Gooding are individuals who have worked for Defendants for approximately three years. (*Id.* ¶ 9.)

Vita-Mix sells many of its blenders through retail stores, where a large portion of its sales are intended for resale.[1] (*Id.* ¶ 11.) In order to sell blenders through retail stores, it hires employees that it calls "roadshow demonstrators." (*Id.* ¶ 14.) The roadshow demonstrators work at third-party stores and warehouses such as Costco Wholesale and Sam's Club. (*Id.* ¶ 14.) There, they set up booths where they demonstrate the products' abilities in order to entice customers to buy the blenders. (*Id.*) Roadshow demonstrators' pay is based on the number of blenders the store, such as Costco Wholesale, sells during the time the demonstration is held—ranging from four to twenty days. (*Id.*)

Plaintiffs commenced this lawsuit based on several grievances they have with the way Defendants handled classification of employees, compensation, and benefits. Plaintiffs allege that their pay sometimes fell below minimum wage for the time worked, that they were not paid overtime, that they did not receive required break and meal times, that they were not compensated for travel time associated with work, and that Defendants failed to keep accurate timekeeping records. (*Id.* ¶¶ 19, 25, 27–29, 32.) Defendants, for their part, deny all wrongdoing (*see* Mot. 4–5), but nonetheless the parties have reached a compromise that they say provides stability and certainty for all involved in the dispute.

---

[1] Vita-Mix also sells blenders online and through direct shows and home shopping networks. (Compl. ¶ 11.)

**C.     Settlement Terms**

The parties propose three sub-classes: a California Class; a non-California class; and an FLSA class.

### 1.     Class Definition

Plaintiffs define the proposed classes as follows:

<u>California Class</u>: All individuals who worked for Defendants in a covered position in California any time from June 3, 2012, to March 13, 2017.

<u>Non-California Class</u>: All individuals who worked for Defendants in covered positions in any of the non-California Rule 23 states (states outside California under whose laws Plaintiffs have alleged state law claims in the proposed First Amended Complaint) any time from June 3, 2013, to March 13, 2017.

<u>FLSA Class</u>: All individuals who worked for Defendants in covered positions in the United States at any time from June 3, 2013, to March 13, 2017, and who are not members of either the California class or the non-California Rule 23 class.

(*See* Settlement Agreement ("SA") ¶¶ 60, 61, ECF No. 54-1.) A "covered position" for purposes of all three sub-class encompasses the positions of Sales Representative or Demonstrator.

The parties estimate that there are 1150 members in the proposed class (across all three sub-classes). (*Id.* ¶ 81.)

### 2.     Settlement Fund

The parties' settlement provides for a maximum, non-reversionary settlement amount of $1,600,000 to resolve Plaintiffs' claims on a class and collective basis. (*Id.*

¶ 31.) Plaintiffs' motion for settlement approval states that the average payment to class members is estimated at approximately $952. (Mot. 3.)

The settlement amount shall be reserved and paid out as follows:

(1) Calculation of Payment: Class members will be paid if they worked for Defendants in the positions of "Sales Representative" or "Demonstrator." The amount will be based on respective numbers of California individual workweeks and/or non-California workweeks during the relevant time periods (listed above in the class definitions). (SA ¶ 84.)

(2) Opting In: Members of the FLSA class will need to opt in (pursuant to 29 U.S.C. § 216(b)). (*Id.* ¶ 34.) Members of the other two classes will not need to submit a claim form in order to receive a settlement payment.

(3) *Excluded* from this settlement class are any members of an earlier settlement class with final approval in a prior action, entitled *Thomas v. Vita-Mix Corp.*, in San Joaquin County state court who have *not* worked for Defendants since August 27, 2015. (*Id.* ¶¶ 4–5.) If class members from the prior action *have* worked for Defendants since then, they can be a part of this class settlement, but their "class period" will begin August 28, 2015. (*Id.*)

(4) Release of Claims: Members of the California and Non-California sub-classes who do not opt out will release their state law claims, and FLSA opt-in class members will release their FLSA claims in addition to any applicable state law claims. (*Id.* ¶ 71.) No class member will release any FLSA claims unless he or she affirmatively opts in and joins the settlement. (*Id.* ¶ 34.)

### i. Attorneys' Fees

Plaintiffs anticipate filing a request for attorneys' fees, which is to be deducted from the maximum settlement amount. (Mot. 21.) Plaintiffs state that the amount of attorneys' fees will not exceed 25% of the maximum settlement amount, and they will also seek verified litigation costs of up to $20,000. (*Id.*)

### iii. Other Costs to Be Deducted

The following costs are also to be deducted from the maximum settlement amount: (1) Incentive awards to the two named plaintiffs of $5,000 each; (2) costs of administering the settlement, not to exceed $25,000; and (3) a payment of $66,666.67 to the California Labor and Workforce Development Agency in connection with Plaintiffs' PAGA claim. (Haines Decl. ¶ 31, ECF No. 54-1.)

### 4. Class Notice

The parties' Settlement Agreement outlines in detail how notice shall be given to potential class members. The parties propose that the CPT Group, an experienced class action settlement administrator, oversee and administer the class settlement. (SA ¶ 49.) Plaintiffs submit two proposed Notices of Pending Class, Collective, and Representative Action Settlement: a Rule 23 Notice (to be sent to the California and Non-California sub-classes), and an FLSA Notice (to be sent to the FLSA sub-class). (*Id.* Exs. B-1 and B-2.)

(1) <u>Transmission of Information to Settlement Administrator</u>: Defendant Vita-Mix will provide the settlement administrator (CPT Group) with a list of class members, including social security numbers,[2] within thirty days following the date of preliminary approval. (*Id.* ¶¶ 64–68.)

(2) <u>Mail</u>: The settlement administrator will then update the address list using a National Change of Address search and will mail and e-mail a notice packet

---

[2] This information is readily available because all potential class members worked for Vita-Mix and provided personal information to the company for purposes of employment.

to all class members. The Settlement Agreement also outlines methods for finding class members whose mail is returned as undeliverable. (*Id.*)

(3) <u>Website</u>: Within this same time period, the settlement administrator will set up an informational website containing the Settlement Agreement, Notice, and Claim Form. (*Id.*)

(4) <u>Calculation of Payment</u>: The claims administrator will also calculate the individual settlement payments in accordance with the methodology discussed above, relating to the number of workweeks each class member worked for Defendants. (*Id.*)

### 5. Requesting Exclusion and Objecting

The Settlement Agreement also provides procedures for requesting exclusion from and objecting to the class settlement. (*See id.* ¶¶ 70, 71.) The Notice sent to class members will outline these procedures for them.

### III. LEAVE TO AMEND THE COMPLAINT

Plaintiffs' Complaint currently states claims under the California Labor Code, the Fair Labor Standards Act ("FLSA"), and the California Business and Professional Code.[3] Part of Plaintiffs' motion for settlement approval asks that they be permitted to file an amended complaint with additional claims. (Mot. 1.) Plaintiffs state that the added claims will "afford no greater potential monetary recovery to class members releasing claims under [] state laws." (*Id.* at 2.) The primary reason for filing an amended complaint appears to be that it would allow for the participation of class members working in states not covered in the initial complaint, as the new complaint would state claims under those states' laws. For good cause appearing and no

---

[3] The specific causes of action are: failure to pay overtime wages (Cal. Labor Code §§ 204, 510, 558, 1194, 1198); FLSA violations (29 U.S.C. §§ 201 *et seq.*); minimum wage violations (Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197); meal period violations (Cal. Labor Code §§ 226.7, 512, 558); rest period violations (Cal. Labor Code §§ 226.7, 516, 558); waiting time penalties (Cal. Labor Code §§ 201–203); and unfair competition (Cal Bus. & Prof. Code §§ 17200, *et seq.*).

objection from Defendants, the Court **GRANTS** Plaintiffs leave to file a first amended complaint.

## IV. CLASS CERTIFICATION

In order to grant preliminary approval of the class-wide settlement, the Court must certify the class for purposes of settlement.

### A. Legal Standard

Class certification is appropriate only if "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are generally referred to as numerosity, commonality, typicality, and adequacy. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Next, the proposed class must meet the requirements of at least one of the three types of class actions listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Those three types are class actions where: (1) individual class members' actions would create a risk of inconsistent adjudications or adjudications that would unfairly bind other class members; (2) the defendant's actions have made final injunctive relief appropriate for the class as a whole; and/or (3) questions of law or fact predominate over questions affecting only individual class members, and a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b).

Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("Settlement benefits cannot form part of a Rule

23(b)(3) analysis; rather the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" (quoting *Amchem Prods.*, 521 U.S. at 620)).

**B.     Discussion**

For the reasons discussed below, the Court finds that all of the requirements for class certification are met.

   **1.     Rule 23(a)**

The putative class satisfies the requirements of numerosity, commonality, typicality, and adequacy.

      **i.     Numerosity**

The approximately 1150 potential class members represent a sufficiently numerous class. (*See* SA ¶ 81.) While no "exact numerical cut-off is required" for the numerosity requirement, "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Thus, this class easily meets the requirement.

      **ii.     Commonality**

Next, the claims of the potential class members here demonstrate common questions of fact and law. All that is required under this element is a "single significant question of law or fact." *Mazza*, 666 F.3d at 589. Although some of the sub-classes assert differing causes of action based on their respective states' laws, all class members' claims include common questions such as: whether Vita-Mix failed to pay class members overtime wages; whether Vita-Mix improperly calculated pay based on blenders sold; and whether Vita-Mix failed to compensate class members for travel time away from home during normal work hours. (*See generally* Compl.) Therefore, this element is satisfied.

      **iii.     Typicality**

The named plaintiffs in this action also meet the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-

extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, the claims of the Named Plaintiffs arise out of the same circumstances as those of the other class members. (*See* Compl.) Named Plaintiffs were subject to the same alleged misclassification as the rest of the proposed class, and they allege the same injuries as the class members. (*Id.*) Thus, they satisfy the typicality requirement.

### iv. Adequacy

Finally, named plaintiffs and their counsel appear to satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Plaintiffs' counsel are aware of no conflicts of interest, and their activities thus far in this case (investigating and prosecuting the claims that are the subject of the parties' settlement) suggest that they are willing and able to provide a robust representation for the absent class members. (*See* Mot. 22.) As such, the putative class and named plaintiffs satisfy all four Rule 23(a) requirements for class certification.

## 2. Rule 23(b)(3)

The Court also concludes that at least one of the three Rule 23(b)(3) categories, predominance/superiority, is present in this case.

The predominance/superiority category means that the proposed class is "sufficiently cohesive to warrant adjudication by representation." A class is sufficiently cohesive where "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Here, all members of the proposed class were (or are currently) subject to Vita-Mix's classification, pay, and benefits policies, and this common factor predominates over any individualized issues in the case. (*See* Compl.)

The putative class action satisfies the superiority requirement because bringing

numerous and individual class actions would likely be inefficient and unfair. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. In this case, the overall claim that Vita-Mix had uniform employee classification policies and pay procedures as to all potential class members makes individual actions especially prone to inefficiency. Because the common issues here predominate to such a high degree, it would be a waste of judicial and monetary resources to address the actions separately.

Thus, the class may be certified for settlement purposes under Rule 23(b)(3).

## IV. PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Next, the Court must assess the proposed settlement itself to determine whether it is fair to all parties. Fed. R. Civ. P. 23(e).

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *Id.* "Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). "At the preliminary approval stage, the court 'evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval.'" *Id.* (quoting *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009)). Thus, "the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: '(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.'" *Id.* (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at \*7 (N.D. Cal. Apr.

29, 2011)).

**B. Discussion**

The Court determines that the settlement negotiations appear fair and adequate and observes that the proposed settlement has no obvious deficiencies.

### 1. Adequacy of Negotiations

The Court is satisfied that the settlement here was the product of "serious, informed, non-collusive negotiations." *See Spann*, 314 F.R.D. at 319. The parties met with a mediator on December 12, 2016, and on December 23, 2016, they filed a Notice of Settlement with the Court. (ECF No. 43.) Plaintiffs claim in their motion for preliminary approval that the agreement is "the result of arm's-length negotiations by counsel," and Defendants have not opposed this contention. (*See* Mot. 18.) Under these circumstances, the Court is convinced that the settlement negotiations were adequate.

### 2. Settlement Terms

After reviewing the terms of the settlement, the Court determines that there are no obvious deficiencies, the settlement does not unfairly give preferential treatment to named plaintiffs, and it falls within the range of possible approval.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (internal citations and quotation marks omitted). Thus, "[t]he initial

decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there was risk to both parties in continuing towards trial. The settlement avoids uncertainty for all parties involved. (*See* Haines Decl. ¶ 13.) It is through this lens of avoided risk that the Court now considers the fairness of the terms of the settlement.

### 1. Settlement Funds

The Court notes no deficiencies in the amount and allocations of settlement funds.

#### i. Incentive Awards

In the Ninth Circuit, there is no per se rule against incentive awards for class representatives. However, "district courts [should] scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "'If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* In evaluating incentive awards, the court should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

The Court concludes that the incentive awards here fall within these guidelines. There are only two named plaintiffs (out of roughly 150 class members) who are receiving a total incentive award of $10,000, which constitutes only a tiny fraction of the maximum settlement amount. Nothing about the incentive awards suggests that the Named Plaintiffs might have been induced to accept a subpar settlement. *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (disapproving incentive awards where the number of class representatives and award amounts were too high;

awards averaged $30,000 each for 29 class representatives); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 957 (9th Cir. 2009) (finding a "sliding scale" incentive award scheme improper).

### ii. Attorneys' Fees

Class counsel intends to seek attorneys' fees in an amount not to exceed 25% of the maximum settlement figure. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

The Court will consider the specific amount requested at the time Plaintiffs move for attorneys' fees, but at this stage it notes no impropriety with reserving a portion of the settlement amount for attorneys' fees.

### 3. Release of Claims

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability." *Spann*, 314 F.R.D. at 327. Here, members of the California and Non-California sub-classes who do not opt out of the settlement will release their state law claims, and FLSA opt-in class members will release their FLSA claims in addition to any applicable state law claims. (SA ¶ 71.) No class member will release any FLSA claims unless he or she affirmatively opts in and joins the settlement. (*Id.* ¶ 34.) On the understanding that this release of claims

1 relates only to claims that have been or could have been asserted in this litigation, the
2 Court concludes that the release "adequately balances fairness to absent class
3 members and recovery for plaintiffs with defendants' business interest in ending this
4 litigation with finality." *See Spann*, 314 F.R.D. at 327–28.

## C. Notice of Class Settlement

For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Here, the parties have agreed that the settlement administrator (the CPT Group) will distribute notice to potential class members. (SA ¶¶ 64–68.) The contact information for potential class members is available through Vita-Mix's employment records, and the settlement administrator will send notice via U.S. Mail. (*Id.*) In addition, the Claims Administrator will set up an informational website. (*Id.* ¶ 42.)

After reviewing this procedure, as well as a proposed copy of the Notice of Collective and Class Action Settlement that will be sent to potential members of the California, Non-California and FLSA classes (SA Exs. B-1 and B-2, ECF No. 54-1), the Court is satisfied that notice here is the best practicable under the circumstances.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' motion for provisional certification of the class and preliminary approval of class settlement. (ECF No. 54.) A hearing on the final approval of the class action certification and

settlement, as well as Class Counsel's motion for fees and costs, shall be held on **December 4, 2017 at 1:30 p.m.** at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012.

**IT IS SO ORDERED.**

July 14, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**