**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
2274 E. Maple Avenue
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

**KILGORE & KILGORE, PLLC**
John H. Crouch, IV (TX SBN 00783906)
jhc@kilgorelaw.com
Christine A. Hopkins (SBN 240248)
cah@kilgorelaw.com
3109 Carlisle St., Suite 200
Dallas, TX 75204
Tel: (214) 969-9099
Fax: (214) 953-0133

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAINOLDO GOODING and NADEEN GOODING, as individuals and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>  vs.<br><br>VITA-MIX CORPORATION, d.b.a. VITAMIX and KELLY SERVICES, INC.,<br><br>         Defendants. | Case No. 16-cv-03898-OWD-JEM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, ADMINISTRATION COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS**<br><br>Judge:    Hon. Otis D. Wright, II<br>Date:     January 22, 2018<br>Time:    1:30 p.m.<br>Courtroom: 5D |

NOTICE IS HEREBY GIVEN that on Monday, January 22, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5D of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, before the Honorable Otis D. Wright, II, Plaintiffs and Class Representatives Rainoldo Gooding and Nadeen Gooding ("Plaintiffs") and Class Counsel Haines Law Group, APC and Kilgore & Kilgore PLLC ("Class Counsel") will, and hereby do, move this Court for an order awarding attorneys' fees, litigation expenses, administration costs, and class representative incentive payments.

Pursuant to the proposed class action settlement agreement, Plaintiffs and Class Counsel seek an award of attorneys' fees of $400,000, or 25% of the $1,600,000 Common Fund; an award of $12,357.75 for reimbursement of actual litigation expenses; payment to CPT Group, Inc., the Settlement Administrator, of $20,000 in settlement administration costs; and an incentive payment of $5,000 each to Plaintiffs, as compensation for their role in bringing and prosecuting this action and assisting Class Counsel.

Plaintiffs will file their Motion for Final Approval at least 28 days prior to the Final Approval Hearing, pursuant to Central District Local Rule 6-1.  This Motion for Class Counsel's Attorneys' Fees, Expenses, Administration Costs, and Incentive Payments is filed prior to the close of the opt-out and objection deadlines, and before the filing of the Motion for Final Approval, pursuant to Federal Rule of Civil Procedure 23(h) and *In re: Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010).

This Motion is based upon this Notice; the attached supporting Memorandum of Points and Authorities; the supporting Declarations of Class Counsel Paul K. Haines and John H. Crouch and attached exhibits; the supporting Declarations of

Plaintiffs Rainoldo Gooding and Nadeen Gooding[1]; the supporting Declaration of Tin Nguyen of CPT Group, Inc., and all exhibits attached thereto; and the pleadings, records, and files in this action.

Dated:  November 17, 2017

Respectfully submitted,
HAINES LAW GROUP, APC

By:     /s/ Paul K. Haines
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the Classes, and Aggrieved Employees

---

[1] Plaintiffs' declarations were originally filed in connection with Plaintiffs' Motion for Preliminary Approval [Dkt. Nos. 54-4, 54-5]. For the convenience of the Court, Plaintiffs have re-filed their declarations in connection with the instant Motion.

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENTS

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ................................................................................................. 1

II. PROCEDURAL HISTORY AND SUMMARY OF THE SETTLEMENT ...... 2

   A. Initial Pleadings and Summary of Plaintiffs' Claims ............................. 2

   B. Extensive Discovery, Mediation, and Settlement Negotiations ............. 3

   C. Preliminary Approval of the Settlement ................................................. 4

   D. This Class Action Settlement Results in Significant Monetary
      Payments.................................................................................................. 4

      1. Summary of the Monetary Terms of the Settlement...................... 4

      2. Current Rate of Class Participation and Estimate of
         Average Settlement Payments........................................................ 5

III. THE COURT SHOULD APPROVE THE FEE AWARD ............................. 6

   A. An Attorney Fee Awarded as a Percentage of the Common Fund Is
      Warranted Under California and Federal Law ........................................ 6

   B. The Ninth Circuit Has Established a "Benchmark" Award of 25% of
      the Common Fund ................................................................................... 8

   C. The Requested 25% Attorney Fee Award is Justified ............................ 9

      1. Class Counsel Obtained a Substantial Recovery for the
         Class Despite Facing Significant Challenges............................... 10

      2. The Results Achieved Support the Requested Fee Award, as
         They Exceed Amounts Recovered in Similar Wage and Hour
         Class Action Settlements............................................................. 12

      3. Class Counsel's Efforts Support the Requested Fee Award......... 13

      4. Class Counsel's Experience and Skill Support the Fee Award .....14

      5. The Complexity of the Issues Supports the Fee Award................ 14

      6. The Risk of Non-Payment Existed At All Times ......................... 15

      7. Class Members' Reaction to the Settlement Is Positive ............... 16

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

8. The Lodestar "Cross-Check" Confirms the Reasonableness of
the Fee Request......................................................................... 16
a. The hours expended on this litigation are reasonable......... 16
b. The requested hourly rates are reasonable.......................... 18
c. The Lodestar Multiplier of 1.4 is Reasonable.................... 21

IV. PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE.............. 22

V. THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE
PAYMENTS ............................................................................... 23

VI. THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED................. 25

VII. CONCLUSION .......................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

# TABLE OF AUTHORITIES

**Federal Cases**

*Adoma v. University of Phoenix, Inc.*

    913 F. Supp. 2d 964 (E.D. Cal. 2019) ........................................................ 15

*Barbosa v. Cargill Meat Solutions Corp.*

    297 F.R.D. 431, 447 (E.D. Cal. Jul. 2, 2013) ....................................... 13, 15

*Bellinghausen v. Tractor Supply Co.*

    306 F.R.D. 245 (N.D. Cal. 2015) ................................................................ 17

*Blum v. Stenson*

    465 U.S. 886 (1984)..................................................................................... 18

*Camacho v. Bridgeport Fin., Inc.*

    523 F.3d 973 (9th Cir. 2008) ...................................................................... 18

*Camden I. Condominium Assoc., Inc. v. Dunkle*

    946 F.2d 768 (11th Cir. 1991) ...................................................................... 7

*Chalmers v. City of Los Angeles*

    796 F.2d 1205 (9th Cir. 1986) .................................................................... 18

*Christopher v. SmithKline Beecham Corp.*

    567 U.S. 142 (2012)..................................................................................... 11

*Craft v. County of San Bernardino*

    624 F.Supp.2d 1113 (C.D. Cal. 2008).................................................. 10, 22

*Fischell v. Equitable Life Assur. Society of U.S.*

    307 F.3d 997 (9th Cir. 2002) ...................................................................... 21

*Fischer v. SJB-P.D., Inc.*

    214 F.3d 1115 (9th Cir. 2000) .................................................................... 16

*Gunawan v. Howroyd-Wright Empl. Agency*

    997 F.Supp.2d 1058 (C.D. Cal. 2014) (Carney, J.) .................................... 11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ..................................................... 8

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir. 1994) ......................................................... 23

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)................................................................. 17

*In Re Activision Sec. Litig.*
    723 F.Supp. 1373 (N.D. Cal. 1989) ............................................ 22

*In re Bluetooth Headset Prods. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) ...................................................... 7

*In re HPL Techs., Inc. Sec. Litig.*
    366 F. Supp. 2d 912 (N.D. Cal. 2005)................................... 18, 20

*In re Immune Response Sec. Litig.*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................... 23

*In re Nucorp Energy, Inc.*
    764 F.2d 655 (9th Cir. 1985) ..................................................... 17

*In re Omnivision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................ 7

*In Re Rite Aid Corp. Sec. Litig.*
    396 F.3d 294 (3d Cir. 2005) ....................................................... 7

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291, 1300 (9th Cir. 1994) ............................................ 21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
    571 F.3d 953 (9th Cir. 2009) ..................................................... 10

*Moore v. James H. Matthews & Co.*
    682 F.2d 830 (9th Cir. 1982) ..................................................... 17

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008) ..................................................... 18

*Parkinson v. Hyundai Motor Am.*
    796 F.Supp.2d 1160 (C.D. Cal. 2010) (Stotler, J.) ...................................... 19

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000) ..................................................... 8

*Swedish Hosp. Corp. v. Shalala*
    1 F.3d 1261 (D.C. Cir. 1993) ..................................................... 8

*Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*
    731 F.Supp.2d 937 (N.D. Cal. 2010) ................................................ 20

*Torchia v. W.W. Grainger, Inc.*
    304 F.R.D. 256 (C.D. Cal. Dec. 29, 2014) (Thurston, J.) ........................... 22

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*
    460 F.3d 1253 (9th Cir. 2006) .................................................... 23

*Vasquez v. Coast Valley Roofing, Inc.*
    266 F.R.D. 482 (E.D. Cal. Mar. 9, 2010) .......................................... 8

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ..................................................... 10

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ......................................... 7, 8, 10, 16, 21, 22

**State Cases**

*21st Century Ins. Co. v. Sup. Ct.*
    47 Cal.4th 511 (2009) ............................................................ 7

*Gentry v. Superior Court*
    42 Cal.4th 443 (2007) ............................................................ 23

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

*Graham v. DaimlerChrysler Corp.*
    34 Cal.4th 553 (2004) ............................................................... 15

*Ketchum v. Moses*
    24 Cal.4th 1122 (2001) ............................................................. 15

*Laffitte v. Robert Half Int'l, Inc.*
    1 Cal.5th 480 (2016) .............................................................. 7, 8

*Prachasaisoradej v. Ralphs Grocery Co.*
    42 Cal.4th 217 (2007) ............................................................. 11

*Thurman v. Bayshore Transit Mgmt., Inc.*
    203 Cal.App.4th 1112 (2012) ................................................. 12


**Federal Statutes and Rules**

Fed. R. Civ. Proc. 23(h) ................................................................ 6

29 U.S.C. § 216(b) ....................................................................... 6


**State Statutes and Rules**

Cal. Labor Code § 203 ................................................................ 12

Cal. Labor Code § 221 ................................................................ 11

Cal. Labor Code § 226 ................................................................ 12

Cal. Labor Code § 226(e) ............................................................. 6

Cal. Labor Code § 1194 ............................................................... 6

Cal. Labor Code § 2699(e)(2) ..................................................... 12

Cal. Labor Code § 2699(g)(1) ....................................................... 6

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

**Unpublished Cases**

*Alvarado v. Nederend*

    Case No. 1:08-cv-1099 OWW DLB

    2011 WL 90228 at *5 (E.D. Cal. Jan. 11, 2011) ......................................... 24

*Ashker v. Sayre*

    Case No. 05-3759 CW

    2011 WL 825713 at * 3 (N.D. Cal. Mar. 7, 2011) ...................................... 23

*Bautista v. Harvest Mgmt. Sub LLC*

    Case No. CV 12-100004 FMO (CWx)

    2014 WL 12579822 at *13 (C.D. Cal. Jul. 14, 2014) (Olguin, J.) ............... 9

*Bravo v. Gale Triangle, Inc.*

    Case No. CV 16-3347 BRO (GJSx)

    2017 WL 708766 at *19 (C.D. Cal. Feb. 16, 2017) (O'Connell, J.) ........... 24

*Carney v. Hillstone Restaurant Grp., Inc.*

    Case No. 2:10-cv-2988-GW-RZ (C.D. Cal. Apr. 5, 2011) (Wu, J.) ........... 12

*Charlebois v. Angels Baseball LP*

    Case No. SACV 10-0853 DOC (ANx)

    2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (Carter, J.) ................. 19

*Cicero v. DirecTV, Inc.*

    Case No. EDCV 07-1182

    2010 WL 2991486 at *6 (C.D. Cal. Jul. 27, 2010) (Cohn, J.) ..................... 8

*Deaver v. Compass Bank*

    Case No. 13-cv-00222-JSC

    2015 WL 8526982 at *11 (N.D. Cal. Dec. 11, 2015) ................................. 13

*Elliott v. Rolling Frito-Lay Sales, LP*

    Case No. SACV 11-1730 DOC(ANx)

    2014 WL 2761316 at *10 (C.D. Cal. Jun. 2, 2014) (Carter, J.) ................... 9

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

*Fernández v. Victoria Secret Stores, LLC*

    Case No. CV 06-04149 MMM (SHx)

    2008 WL 8150856 at *12 (C.D. Cal. Jul. 21, 2008) (Morrow, J.).. 14, 17, 20

*Fleming v. Covidien, Inc.*

    Case No. EDCV-10-1487-RGK (OPx)

    2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (Klausner, J.) ............. 12

*Fuentes v. Macy's West Stores, Inc.*

    Case No. CV 14-790-ODW (FFMx)

    2015 WL 9698989 at *2 (C.D. Cal. Jun. 29, 2015) (Wright, J.).................. 9

*Garner v. State Farm Mut. Auto. Ins. Co.*

    Case No. CV 08 1365 CW

    2010 WL 1687829 at *2 (N.D. Cal. Apr. 22, 2010)................................... 22

*In re Chiron Corp. Sec. Litig.*

    Case No. C-04-4293-VRW

    2007 WL 4249902 at *6 (N.D. Cal. Nov. 30, 2007)................................. 20

*Knight v. Red Door Salons, Inc.*

    Case No. 08-1520 SC

    2009 WL 248367 at *3 (N.D. Cal. Feb. 2, 2009)........................................ 8

*Leetzow v. Metropolitan Life Ins.*

    *Co.*, Case No. EDCV-15-2468-VAP (KKx)

    2017 WL 1231719 at **2-3 (C.D. Cal. Mar. 3, 2017) (Phillips, J.)............ 19

*Lewis v. Wendy's Int'l, Inc.*

    Case No. 09-7193 MMM (JCx)

    2011 WL 13176648 at **9-14 (C.D. Cal. Jun. 30, 2011) (Morrow, J.)........ 9

*McPhail v. First Command Fin. Planning, Inc.*

    Case No. 05-cv-179-IEG-JMA

    2009 WL 839841 at *6 (S.D. Cal. Mar. 30, 2009)................................... 16

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

*Monaghan v. Telecom Italia Sparkle of North Am.*

      Case No. CV 13-646 ABC (PLAx)

      2014 WL 12639117 at *2 (C.D. Cal. Jul. 30, 2014) (Collins, J.)............... 19

*Morgret v. Applus Tech., Inc.*

      Case No. 1:13-cv-01801-JLT

      2015 WL 3466389 at *17 (E.D. Cal. Jun. 1, 2015)..................................... 22

*Murillo v. Pac. Gas & Elec. Co.*

      Case No. CIV 2:08-1974 WBS GGH

      2010 WL 2889728 at *12 (E.D. Cal. July 21, 2010)................................... 15

*Nguyen v. Radient Pharmaceuticals Corp.*

      Case No. SACV 11-406 DOC (MLGx)

      2014 WL 1802293 at *11 (C.D. Cal. May 6, 2014) (Carter, J.) ................ 19

*Ross v. U.S. Bank Nat'l Ass'n*

      Case No. C 07-2951 SI

      2010 WL 3833922 at *3 (N.D. Cal. Sept. 29, 2010)................................... 24

*Schiller v. David's Bridal, Inc.*

      Case No. 1:10-cv-616-AWI-SKO

      2012 WL 2117001 at *20 (E.D. Cal. June 11, 2012) ................................. 17

*Sorenson v. PetSmart, Inc.*

      Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008).............. 13

*Syed v. M-I LLC*

      Case No. 1:14-742 WBS BAM

      2016 WL 310135 at *9 (E.D. Cal. Jan. 26, 2016) ........................................ 7

*Taylor v. Meadowbrook Meat Co., Inc.*

      Case No. 3:15-cv-132-LB

      2016 WL 4916955 at *5 (N.D. Cal. Sept. 15, 2016).................................... 8

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

*Thieriot v. Celtic Ins. Co.*

    Case No. C 10-04462 LB

    2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011).......................... 7, 16, 24

*Williams v. Centerplate, Inc.*

    2013 WL 4525428 at *4 (S.D. Cal. Aug. 26, 2013).................................... 13

*Woods v. Vector Marketing Corp.*

    Case No. C-14-0264 (EMC)

    2015 WL 2453202 at *4 (N.D. Cal. May 22, 2015).................................... 12

**<u>Other Sources</u>**

*Newberg on Class Actions* (5th ed. 2015) at § 15.66, pp. 228-31).......................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

On July 14, 2017, this Court granted preliminary approval of the parties' Class Action Settlement Agreement and Stipulation ("Settlement Agreement" or "Settlement").  Now before the Court is Plaintiffs Rainoldo Gooding and Nadeen Gooding's ("Plaintiffs") motion for an award of attorneys' fees, litigation expenses, administration costs, and incentive payments. Pursuant to the Settlement Agreement, Class Counsel seek attorneys' fees of $400,000, representing 25% of the <u>non-reversionary</u> Maximum Settlement Amount of $1,600,000, and reimbursement of actual litigation expenses of $12,357.75.  Plaintiffs also request approval of a payment of $20,000 to CPT Group, Inc., the Settlement Administrator, for its services in administering the Settlement, and incentive payments of $5,000 each to Plaintiffs, based on their efforts in litigating this action and assisting Class Counsel, their general release of <u>all</u> known and unknown claims, and the financial and reputational risk they assumed in vindicating the rights of their fellow Class Members.  Notably, not a single Class Member has filed an objection to the requested fees, expenses, administration costs, or incentive payments.

Class Counsel respectfully request that the Court approve the requested 25% fee award, which is in line with the Ninth Circuit's 25% "benchmark" and is also justified based on: (1) the substantial monetary recovery obtained for the Class Members; (2) Class Counsel's efforts in zealously prosecuting this case; (3) Class Counsel's skill and considerable wage and hour class action experience; (4) the novelty and complexity of the issues regarding the wage and hour claims at issue in this litigation; (5) the significant risk of non-payment due to Class Counsel's undertaking this matter on a purely contingent basis; (6) the lack of objections to the settlement, including to Class Counsel's fee request; and (7) the requested fees yield a reasonable 1.4 multiplier when compared to Class Counsel's lodestar.

///

## II.  PROCEDURAL HISTORY AND SUMMARY OF THE SETTLEMENT

### A.  Initial Pleadings and Summary of Plaintiffs' Claims

On June 3, 2016, Plaintiffs filed their original class, collective and representative action complaint against Defendants Vita-Mix Corporation ("Vita-mix") and Kelly Services, Inc. ("Kelly") (together, "Defendants") in the U.S. District Court for the Central District of California, along with their respective Consents to Sue. *See* Dkt. No. 1.[2] Both Defendants answered on August 19, 2016. Dkt. Nos. 26 & 27.

Vita-Mix manufactures household and commercial blenders and blending equipment. Its products are sold in all 50 states, in retail stores, warehouse stores like Costco, and online.  In addition, Vita-Mix puts on "roadshows," primarily in Costco locations across the country, where it hires "Demonstrators" (also known as "Sales Representatives") to man Vitamix demonstration booths for the duration of the roadshows, which can last anywhere from four to 20 days or more. Demonstrators are paid on commission, receiving a set amount per Vita-Mix product that is sold during each "roadshow" they work.  Kelly is a staffing agency and/or payroll company that provided various staffing services with respect to Plaintiffs and other Vita-Mix Demonstrators, and was Plaintiffs' W-2 employer for tax purposes while they worked for Vita-Mix.

Plaintiffs worked for Defendants in California as roadshow Demonstrators between 2012 and 2016, primarily at Costco locations.  Plaintiffs' claims in this lawsuit stem from their contention that Defendants misclassified Demonstrators as "exempt" employees under federal and state law, pursuant to the "outside sales" exemption.  Plaintiffs contend that as a result of this misclassification, Defendants failed to pay Plaintiffs and other Demonstrators overtime compensation and failed

---

[2] The original Complaint also named Michael Lentini as a named plaintiff, but Mr. Lentini has since been dismissed. [*See* Dkt. No. 41.]

to pay them minimum wages for training time, under applicable state and federal law.  Plaintiffs further contend that Defendants failed to provide meal and rest periods, made improper wage deductions, failed to provide accurate wage statements, and failed to pay all final wages on termination, to Demonstrators in California, in violation of California law.

**B.**    **Extensive Discovery, Mediation, and Settlement Negotiations**

After the Complaint was filed, the Parties agreed to explore potential resolution through private mediation, and agreed to mediate in San Francisco with Mark Rudy, Esq., a preeminent California wage and hour class action mediator, and stipulated to relief from Local Rule 23-3 pending mediation.  Dkt No. 24.  The Parties further agreed to engage in extensive informal discovery in connection with the mediation.   In advance of mediation, Defendants provided Plaintiffs with payroll records, event schedules, and other records for all putative class members, comprised of multiple spreadsheets containing tens of thousands of lines of data.  Defendants also provided several key data points for the putative class, including total commissions paid to class members, the locations where class members worked each "roadshow," and other relevant data necessary to evaluate each of the claims on a classwide basis.  Plaintiffs analyzed the data produced by Defendants and created damages exposure analyses for purposes of mediation.  In addition, significant information and documents produced by Plaintiffs themselves were instrumental in evaluating Plaintiffs' claims and potential damages.

The parties attended mediation with Mark Rudy in San Francisco on December 12, 2016.  The parties did not reach a resolution at the mediation, but they continued their settlement discussions and, with the help of a formal mediator's proposal from Mr. Rudy, eventually agreed in principle to resolve the litigation on a classwide basis.  Over the next several months, the parties extensively negotiated, drafted, and executed the long-form Settlement Agreement.

///

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

### C.    Preliminary Approval of the Settlement.

Plaintiffs moved this Court for preliminary approval on May 30, 2017.  Dkt. No. 54.  On July 10, 2017, this Court held a hearing on the Motion, and on July 14, 2017, this Court entered an Order granting preliminary approval of the Settlement and granting leave to file the operative First Amended Complaint.  Dkt. No. 59.

### D.    This Class Action Settlement Results in Significant Monetary Payments.

#### 1.    Summary of the Monetary Terms of the Settlement

Defendants have agreed to pay a <u>non-reversionary</u> Maximum Settlement Amount of $1,600,000.  After deducting amounts for Plaintiffs' incentive payments, settlement administration costs, attorneys' fees and verified litigation expenses, and the PAGA payment to the Labor and Workforce Development Agency (LWDA), the settlement requires Defendants to pay at least $1,095,000 to the members of the Classes.  *See* Dkt. No. 54-1 (Haines Decl. in Support of Prelim. Approval), ¶ 31.

The Settlement Agreement provides for three settlement Classes, which were preliminarily certified by this Court in its preliminary approval order: (1) the "California Class," comprised of all individuals who worked for Defendants in a Covered Position (i.e., Sales Representative or Demonstrator) in California at any time from June 3, 2012 through March 13, 2017 ("California Class Period"); (2) the "Non-California Rule 23 Class," comprised of all individuals who worked for Defendants in a Covered Position in any of the "Non-California Rule 23 States," which are states outsides of California under whose laws Plaintiffs have alleged state-law claims in the FAC,[3] at any time from June 3, 2013 through March 13,

---

[3] The Non-California Rule 23 States are: Arkansas, Connecticut, Georgia, Hawaii, Idaho, Illinois, Kansas, Maryland, Massachusetts, Minnesota, Missouri, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, West Virginia, Wisconsin, and Wyoming. As explained in the Plaintiffs' Motion for Preliminary Approval, each of these states' minimum wage and/or overtime laws provide no additional protections beyond what is available under the FLSA.

4

2017 ("Non-California Class Period"); and (3) the FLSA Class, comprised of all individuals who worked for Defendants in Covered Positions in the United States at any time from June 3, 2013 to the March 13, 2017 ("FLSA Class Period"), who are not members of either the California Class or the Non-California Rule 23 Class.

Individual Settlement Payments to Class Members will be calculated as follows: First, the "Net Settlement Amount" will be calculated by subtracting Court-approved attorneys' fees, litigation expenses, administration costs, incentive payments, and the $66,666.67 PAGA Payment from the Maximum Settlement Amount. *See* Settlement, ¶¶ 30, 36. The Net Settlement Amount will then be divided into two funds: (i) 40% of the Net Settlement Amount will be designated the California Fund, and (ii) 60% of the Net Settlement Amount will be designated the Non-California Fund. Each member of the California Class will be eligible to receive a "California Settlement Share" from the California Fund, which will be calculated based on the proportional number of workweeks worked in California during the California Class Period. In addition, each member of the Non-California Rule 23 Class and of the FLSA Class will be eligible to receive a "Non-California Settlement Share" from the Non-California Fund, which will be calculated based on the proportional number of workweeks worked outside California during the Non-California Class Period. *See* Settlement, ¶ 84. Finally, 25% of the $66,666.67 PAGA Payment (i.e. $16,666.67), will be distributed among California Class members based on the proportional number of workweeks worked in California from June 3, 2015 through March 13, 2017. *Id.*, ¶ 84(e).

## 2. Current Rate of Class Participation and Estimate of Average Settlement Payments

While members of the FLSA Class are required to opt-in to the Settlement pursuant to 29 U.S.C. § 216(b), members of either (or both) of the Rule 23 Classes (i.e., the California Class and the Non-California Rule 23 Class) do not need to submit a claim to participate in the Settlement. There are a total of 1,055 total

Covered Class Members, including 857 Rule 23 Class Members and 198 FLSA Class Members. Nguyen Decl., ¶ 5.  As of November 13, 2017, only one of the 857 Rule 23 Class Members has opted out of the Settlement, resulting in a current participation rate of 99.9% among Rule 23 Class Members.  *Id.* at ¶ 16.  In addition, 59 FLSA Class Members have already opted-in to the Settlement, bringing the total number of Participating Class Members to 915. *Id.* at ¶¶ 17-18.  No Class Member has objected to any portion of the Settlement.  *See id.* at ¶ 15.

Assuming the participation rate does not change between November 13, 2017 and the close of the opt-out period, the Settlement will yield an estimated average payout of $1,202.19 to Participating Class Members, with the highest payment estimated at $12,005.45. Nguyen Decl., ¶ 18. These payments far exceed those in other judicially-approved wage and hour class settlements. *See* Section III.C.2 *infra*.

**III.   THE COURT SHOULD APPROVE THE FEE AWARD**

   **A. An Attorney Fee Awarded as a Percentage of the Common Fund Is Warranted Under California and Federal Law.**

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. Proc. 23(h).

Here, there are multiple statutory bases for Plaintiffs to seek reasonable attorney fees and costs under California and federal law.  *See* Labor Code § 1194 (authorizing fee award for prevailing employee in action to recover minimum wages and overtime wages); 29 U.S.C. § 216(b) (authorizing recovery of attorney fees and costs in successful FLSA action); Labor Code §§ 226(e) (fee award for successful claim for wage statement violations) and 2699(g)(1) (authorizing recovery of attorney fees and costs for successful PAGA action).

Under California law, "[w]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff…for the benefit of all results in the creation…of that fund, such plaintiff…may be awarded attorney's fees out of

the fund." *See 21st Century Ins. Co. v. Sup. Ct.*, 47 Cal.4th 511, 520 (2009).  In awarding attorney fees from a common fund, California courts generally award a percentage of the recovery, subject to considerations of reasonableness.  Indeed, just over a year ago the California Supreme Court confirmed the validity of the percentage-of-the-fund method in class action cases.  *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480, 506 (2016) (holding that "the percentage of the fund method survives in California class action cases").

Federal district courts in the Ninth Circuit also generally award attorney fees based on a percentage of the recovery in common fund cases.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund").  Indeed, "the primary basis of the fee award remains the percentage method…" *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (use of the "percentage method in common fund cases appears to be dominant.");  *Syed v. M-I LLC*, Case No. 1:14-742 WBS BAM, 2016 WL 310135 at *9 (E.D. Cal. Jan. 26, 2016) (percentage method is "particularly appropriate in common fund cases where, as here, the benefit to the class is easily quantified.").  "Additionally, the percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant." *Thieriot v. Celtic Ins. Co.*, Case No. C 10-04462 LB, 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011).

The dominance of the percentage method in common fund cases is echoed by other federal circuits.  *See*, *e.g.*, *In Re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."); *Camden I. Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)

("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("In sum, we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); *see also Laffitte*, *supra*, 1 Cal.5th at 493 (observing that "[c]urrently, all the circuit courts either mandate or allow their district courts to use the percentage method in common fund cases…") (citing *Newberg on Class Actions* (5th ed. 2015) at § 15.66, pp. 228-31).

**B. <u>The Ninth Circuit Has Established a "Benchmark" Award of 25% of the Common Fund</u>**

In the Ninth Circuit, the typical range of reasonable attorney's fees is 20% to 33 1/3% percent of the total settlement value, with 25% considered a "benchmark" percentage. *See Vizcaino*, *supra*, 290 F.3d at 1047; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. Mar. 9, 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Taylor v. Meadowbrook Meat Co., Inc.*, Case No. 3:15-cv-132-LB, 2016 WL 4916955 at *5 (N.D. Cal. Sept. 15, 2016) ("The Ninth Circuit has established a 'benchmark' that fees should equal 25% of the settlement…").

The percentage applied in a particular case, however, depends on the facts of each case and "in most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, Case No. 08-1520 SC, 2009 WL 248367 at *3 (N.D. Cal. Feb. 2, 2009). Notably, "courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero v. DirecTV, Inc.,* Case No. EDCV 07-1182, 2010 WL 2991486 at *6 (C.D. Cal. Jul. 27, 2010) (Cohn, J.).

Indeed, courts in this District, including this very Court, have awarded attorneys' fees in common fund cases in excess of the 25% "benchmark." *See, e.g., Fuentes v. Macy's West Stores, Inc.*, Case No. CV 14-790-ODW (FFMx), 2015 WL 9698989 at *2 (C.D. Cal. Jun. 29, 2015) (Wright, J.) (this Court awarding fees of 33 1/3%, amounting to $1,333,333.33 out of $4,000,000 settlement sum and reflecting a 1.63 multiplier of class counsel's lodestar in wage and hour class action); *Elliott v. Rolling Frito-Lay Sales, LP*, Case No. SACV 11-1730 DOC(ANx), 2014 WL 2761316 at *10 (C.D. Cal. Jun. 2, 2014) (Carter, J.) (in wage and hour class action, awarding fees of 30%, amounting to $480,000 out of $1,600,000 common fund, where "case was resolved very early in litigation" and fees amounted to a 1.73 multiplier of counsel's lodestar); *Bautista v. Harvest Mgmt. Sub LLC*, Case No. CV 12-100004 FMO (CWx), 2014 WL 12579822 at *13 (C.D. Cal. Jul. 14, 2014) (Olguin, J.) (in wage and hour class action, awarding fees of 30%, amounting to $660,000 out of $2,200,000 common fund); *Lewis v. Wendy's Int'l, Inc.*, Case No. 09-7193 MMM (JCx), 2011 WL 13176648 at **9-14 (C.D. Cal. Jun. 30, 2011) (Morrow, J.) (in wage and hour class action, awarding fees of 33 1/3%, amounting to $500,000 of $1,500,000 common fund).

### C. **The Requested 25% Attorney Fee Award is Justified.**

Here, Class Counsel seek an award of 25% of the common fund (i.e., the Ninth Circuit "benchmark") based on (1) the substantial monetary recovery obtained for Class Members; (2) Class Counsel's efforts in pressing the class claims forward; (3) Class Counsel's skill and considerable wage and hour class action experience; (4) the complexity of the issues regarding the wage and hour claims at issue, including the potential application of overtime exemptions under both state and federal law; (5) the significant risk of non-payment due to Class Counsel taking this matter on a purely contingent basis; and (6) the fact that not a single class member has objected to any aspect of the proposed settlement; and (7) the requested fee award yields a reasonable 1.4 multiplier when compared to Class Counsel's

lodestar.  *See Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1116-17 (C.D. Cal. 2008) (enumerating the above as factors that courts often consider when determining a fee award); *see also Vizcaino*, *supra*, 290 F.3d at 1048-1050 (considering the results achieved, risks of litigation, the skill required, quality of work performed, contingent nature of the fee, and awards made in similar cases in assessing reasonableness of percentage awarded as attorneys' fees).

## 1. Class Counsel Obtained a Substantial Recovery for the Class Despite Facing Significant Challenges.

Plaintiffs obtained a substantial recovery for Class Members in the face of significant challenges.  As detailed in Plaintiffs' Motion for Preliminary Approval, Defendants presented several defenses to Plaintiffs' claims, both on the merits and with respect to class certification.  Indeed, this case was fraught with risk at virtually every turn.  For example, Plaintiffs faced substantial risks in moving forward with their underlying misclassification theory, as the Ninth Circuit has previously rejected uniform misclassification as a sufficient basis for class certification. *See*, *e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (reversing certification of class of outside sales employees and noting, "the fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009) (affirming denial of certification of outside sales exemption class, finding "[p]laintiffs' claims require a fact-intensive, individual analysis of each employee's exempt status.").

Plaintiffs also faced significant risks on the merits of their claims, assuming they could certify a class. There was a risk that this Court would disagree with Plaintiffs that Costco was Defendants' "place of business" for purposes of the outside sales exemption. There was also a risk that the Court would find Plaintiffs' job duties constituted "sales" rather than "promotional work," particularly given the

U.S. Supreme Court's decision in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) finding that limiting the definition of "sale" to "contracts for the exchange of goods or services in return for value" would be "much too narrow" and that obtaining "nonbinding commitments" from physicians was sufficient to find drug salespersons to be exempt as outside salespersons. *Christopher*, 567 U.S. at 163-65. There was also a risk that, given that Demonstrators are not closely supervised, this Court or a jury would find that Plaintiffs were not controlled to such an extent as to undermine their exempt status.)

With respect to Plaintiffs' meal and rest period claims, aside from the exemption defense, Defendants asserted that Demonstrators were provided meal and rest periods and that they often worked in "tandem," which allowed them to cover for each other during breaks, and any failure to take breaks was the result of individual employee choice. Defendants further contend that individual issues would predominate on the meal and rest period claims, precluding class certification.

With respect to Plaintiff's unlawful deductions claim, Defendants assert that Plaintiffs' wage deduction claim lacks merit pursuant to *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217 (2007), which held that "where the parties so understand and agree, final compensation, or at least a portion thereof, may be contingent on events that occur after the employee has performed service…." Defendants further assert that Plaintiffs' deduction claim fails because no private right of action exists under Labor Code § 221. *See Gunawan v. Howroyd-Wright Empl. Agency*, 997 F.Supp.2d 1058, 1068 (C.D. Cal. 2014) (Carney, J.) (granting summary judgment for employer on Section 221 claim because that Section does not, "on its face, provide[] an express private remedy to enforce its provisions.").

Defendants further assert that there was a "good faith dispute" as to whether additional wages are owed and that any violations were not "knowing and intentional," which undermines Plaintiffs' claims for waiting time penalties under

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

Labor Code §§ 203 and 226, respectively. *See, e.g., Woods v. Vector Marketing Corp.*, No. C-14-0264 (EMC), 2015 WL 2453202 at *4 (N.D. Cal. May 22, 2015) (finding that "good faith dispute" over whether worker was properly classified precludes imposition of penalties under Labor Code §§ 203 or 226).

For these reasons, Defendants also claim that they did not engage in any unfair business practices and, further, deny liability under the PAGA. Defendants also assert that, should Plaintiffs have prevailed on their PAGA claim, this Court would likely utilize its discretion to award a much lower amount of PAGA civil penalties than the full amount potentially available under the statute. *See* Cal. Labor Code § 2699(e)(2); *see also Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of PAGA penalties); *Fleming v. Covidien, Inc.*, Case No. EDCV-10-1487-RGK (OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (Klausner, J.) (reducing PAGA penalties from $2.8 million to $500,000).

In the face of these and other defenses, Plaintiffs and Class Counsel nevertheless secured a substantial $1,600,000.00 recovery for the Settlement Class, resulting in average settlement payments estimated at more than $1,200, with the highest payment estimated at more than $12,000.   Thus, this factor supports Plaintiffs' request for a 25% fee award.

### 2.  The Results Achieved Support the Requested Fee Award, as They Exceed Amounts Recovered in Similar Wage and Hour Class Action Settlements.

The $1,202.19 average settlement payment for Class Members is significant, and greatly exceeds similar wage and hour class action settlements that have received final approval from judges in this and other California federal districts. *See, e.g., Carney v. Hillstone Restaurant Grp., Inc.*, No. 2:10-cv-2988-GW-RZ (C.D. Cal. Apr. 5, 2011) (Wu, J.) (wage and hour class action settlement of overtime, meal period, rest period, unlawful deductions, failure to reimburse expenses, and related penalty claims where average class member recovery was

approximately $179); *Deaver v. Compass Bank*, Case No. 13-cv-00222-JSC, 2015 WL 8526982 at *11 (N.D. Cal. Dec. 11, 2015) (in wage and hour class action, finding average recovery of "over $700" to be "very favorable" and approving attorney fees of 33% of the common fund); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. Jul. 2, 2013) (approving wage and hour class action settlement yielding average settlement payment of $601.91, awarding attorney fees of 33.3% of common fund, and collecting cases where similar fee awards were granted); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) (wage and hour class action settlement of meal, rest and related penalty claims approved where average class member recovery was approximately $60)*; Williams v. Centerplate, Inc.*, 2013 WL 4525428 at *4 (S.D. Cal. Aug. 26, 2013) (granting final approval of minimum wage, overtime wage, and meal and rest break class action settlement where average recovery for each class member was approximately $108, describing result as "very favorable," and awarding fees of 30% of common fund). Thus, this factor also supports the requested fee award.

### 3. Class Counsel's Efforts Support the Requested Fee Award.

Class Counsel have devoted significant time and resources toward the successful resolution of this matter. Among other things, Class Counsel conducted extensive factual and legal research and analysis regarding Plaintiffs' claims; interviewed Plaintiffs and other Class Members; conducted extensive analysis of the relevant data, including multiple spreadsheets containing tens of thousands of lines of data, to create estimated damages models; prepared for and attended a full-day mediation in San Francisco; extensively negotiated and drafted the long-form Settlement Agreement; prepared the Motion for Preliminary Approval and supporting documents and appeared at the Preliminary Approval Hearing; oversaw the Notice process, including fielding a significant number of phone calls from Class Members and supervising the activities of the settlement administrator;

drafted the instant Motion and supporting documents; and will also draft the forthcoming Motion for Final Approval, continue to oversee the Notice process, and appear at the Final Approval hearing.  Haines Decl., ¶ 14; Korobkin Decl., ¶¶ 5-6; Crouch Decl., ¶¶ 31, 33-34.  Class Counsel have also expended $12,357.75 in out-of-pocket costs, with no guarantee of reimbursement.  Haines Decl., ¶ 15 & Exh. B; Crouch Decl., ¶¶ 30, 34.  It was only as a result of Class Counsel's significant efforts that this litigation resulted in a favorable class-wide resolution.

### 4.  Class Counsel's Experience and Skill Support the Fee Award.

Class Counsel possess significant wage and hour class action experience. Collectively, Class Counsel have over three decades of plaintiff and defense-side wage and hour class action experience pertaining to claims that are at issue in the lawsuit.  *See* Haines Decl., ¶¶ 3-8; Korobkin Decl., ¶¶ 2-4; Crouch Decl., ¶¶ 2, 5, 36.  Class Counsel have been appointed as class counsel in dozens of other cases, and have successfully certified classes in numerous contested motions for class and conditional certification. *See id.* "All class counsel are qualified, experienced, and skilled attorneys," which favors the requested fee award.  *See Fernández v. Victoria Secret Stores, LLC*, Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856 at *12 (C.D. Cal. Jul. 21, 2008) (Morrow, J.).

### 5.  The Complexity of the Issues Supports the Fee Award.

This litigation involved complex and unsettled legal and procedural issues, including Defendants' potential liability for overtime and/or minimum wage violations under California law, other states' laws, and the FLSA; the appropriate standards for certification of Plaintiffs' proposed Classes; issues pertaining to the proper application of the outside sales exemption; and the availability of waiting time penalties and wage statement penalties in a misclassification case where the Defendants claimed good-faith defenses, just to name a few. Class Counsel zealously navigated these issues to reach a favorable resolution for the Class.

Because of the complexity of the issues in this case, Plaintiffs submit that the requested fee award is appropriate. *See, e.g., Murillo v. Pac. Gas & Elec. Co.*, Case No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 at *12 (E.D. Cal. July 21, 2010) (awarding 1.5 multiplier based in part on complexity of issues in the litigation); *see Adoma v. U. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 983 (2019)("It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts").

### 6. <u>The Risk of Non-Payment Existed At All Times.</u>

"A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580 (2004).  Here, Class Counsel took this matter on a purely contingent basis and have invested significant time and resources in litigating this matter for nearly two years without any guarantee of payment for their services.  *See* Haines Decl., ¶ 19; Crouch Decl., ¶ 31.  Not only have Class Counsel rendered their services without any compensation to date, they have also advanced all out-of-pocket litigation costs, which, as stated, amount to $12,357.75.  Because there was a real risk that they would not be compensated for their work or reimbursed for their litigation expenses, the requested fee award is appropriate. *See Barbosa v. Cargill*, *supra*, 2013 WL 3340939 at *16 ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate"); *Murillo*, *supra*, 2010 WL 2889728 at *12 ("Fee enhancements in contingency cases exists to compensate for the risk of loss inherent in such cases and create financial incentives for attorneys to take cases to protect important rights and goals, such as fair labor standards"); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market

value of his work if he is only paid for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

### 7.  Class Members' Reaction to the Settlement Is Positive.

Notice of this proposed settlement, including the amounts requested for attorney's fees, costs, administration expenses, and Plaintiffs' incentive awards, was mailed to all 1,055 Covered Class Members. Nguyen Decl., ¶¶ 7, 9.  Not a single Class Member has filed an objection to the requested fee or incentive awards, and only one Rule 23 Class Members has elected to opt out of the Settlement. *Id.*, ¶¶ 15, 16. These facts strongly support the requested fee award. *See, e.g., Thieriot, supra*, 2011 WL 1522385 at *6 ("The fact that no members of the 390-person class objected to the proposed 33% fee award—which was also communicated in the notice—supports an increase in the benchmark rate"); *McPhail v. First Command Fin. Planning, Inc.*, No. 05-cv-179-IEG-JMA, 2009 WL 839841 at *6 (S.D. Cal. Mar. 30, 2009) ("The presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate.").

### 8.  The Lodestar "Cross-Check" Confirms the Reasonableness of the Fee Request

Courts utilizing the common fund approach can also perform a lodestar "cross-check" on the reasonableness of the requested percentage award. *Vizcaino, supra*, 290 F.3d at 1050-51. Here, Class Counsel's lodestar also supports the requested fee award.  As detailed below, Class Counsel's lodestar is approximately $278,392.50. Haines Decl., ¶¶ 10-13; Crouch Decl., ¶¶ 29, 34.  A 25% fee award therefore reflects a modest multiplier of 1.4, and should be approved.  Indeed, and as explained above and below, courts routinely approve multipliers at this level and higher.

#### a.  The hours expended on this litigation are reasonable.

The first step in determining Class Counsel's lodestar is to determine the number of hours reasonably expended. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  Fee awards should include all hours which were

"reasonably expended." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, the Court need not perform an "exhaustive cataloguing and review of counsel's hours." *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-616-AWI-SKO, 2012 WL 2117001 at *20 (E.D. Cal. June 11, 2012). Indeed, "it is well established that the lodestar cross-check calculation need entail neither mathematical precision nor bean counting…courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (citations omitted); *see also Fernandez*, *supra*, 2008 WL 8150856 at *14 ("The lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award.")

Here, Class Counsel will have incurred approximately 601.3 hours on this case through final approval. *See* Haines Decl., ¶¶ 10-13; Korobkin Decl., ¶¶ 5-6; Crouch Decl., ¶¶ 29, 34.  Class Counsel is entitled to compensation for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982); *see also, Hensley, supra,* 461 U.S. at 431 (total compensable hours include all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all the time reasonably expended on the matter"). This includes time spent preparing this motion for attorneys' fees. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable").  Here, and as set forth in Section III.C.4., *supra*, the tasks performed by Class Counsel were all reasonably necessary in the effective prosecution of Plaintiffs' claims and in negotiating and arriving at the Settlement.

The number of hours spent working on this case is reasonable because, at the time the work was performed, Class Counsel reasonably believed it to be done in the pursuit of success. A different standard for determining "reasonableness" would put Class Counsel in the precarious position of constantly second-guessing litigation strategy in a statutory fee case, even though it would be reasonable and in the best interests of the client for counsel to pursue the same strategy for a fee-paying client. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain…the court should defer to the winning lawyer's professional judgment [regarding hours]; after all, he won, and might not have, had he been more of a slacker.").

**b. <u>The requested hourly rates are reasonable.</u>**

To determine Class Counsel's hourly rates, the Court should look to rates in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. *Chalmers v. City of Los Angele*s, 796 F.2d 1205, 1210-1211 (9th Cir. 1986); *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984). The "relevant community" is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). In addition, when setting rates, courts should utilize attorneys' "current" rates, i.e., their rates at the time of the fee application. *See In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919–20 (N.D. Cal. 2005) (explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel ha[ve] not been paid contemporaneously").

Here, Class Counsel's request for attorneys' fees using a lodestar cross-check is based on rates ranging from $300 to $600 per hour. Haines Decl., ¶¶ 10-13; Crouch Decl., ¶ 28. Class Counsel submit that these hourly rates are reasonable because they are in line with the rates at which they have previously been approved; because of their skill, wage and hour class action experience and

reputation; fee awards to other attorneys of similar experience in this District; and the *Laffey* Matrix.

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010) (Stotler, J.). Courts in the Central District have approved similar hourly rates for attorneys with similar experience as Class Counsel. *See, e.g., Leetzow v. Metropolitan Life Ins. Co.*, Case No. EDCV-15-2468-VAP (KKx), 2017 WL 1231719 at **2-3 (C.D. Cal. Mar. 3, 2017) (Phillips, J.) (approving hourly rate of $600 for attorney with 11 years of experience); *Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (Carter, J.) (in 2012, approving hourly rate of $450 for attorney with six years of experience and $460 for attorney with seven years of experience for work performed in 2011); *Nguyen v. Radient Pharmaceuticals Corp.*, Case No. SACV 11-406 DOC (MLGx), 2014 WL 1802293 at *11 (C.D. Cal. May 6, 2014) (Carter, J.) (in 2014, approving $475 hourly rate for attorney with five years of experience); *Monaghan v. Telecom Italia Sparkle of North Am.*, Case No. CV 13-646 ABC (PLAx), 2014 WL 12639117 at *2 (C.D. Cal. Jul. 30, 2014) (Collins, J.) (in 2014, approving $500 hourly rate for 8th-year plaintiff's attorney in wage and hour case) (*rev'd in part on other grounds*, 647 Fed.Appx. 763). Based on the above, the requested hourly rates of $600 for Mr. Haines (class of 2006), $500 for Mr. Korobkin (class of 2009), $350 for Mr. Crouch (class of 1992), and $300 for Ms. Hopkins (class of 2005) are reasonable.[4]

As detailed in Class Counsel's supporting declarations and the declarations submitted in support of Plaintiffs' motion for preliminary approval, Class Counsel

---

[4] Although they are more senior than Mr. Haines and Mr. Korobkin, Mr. Crouch and Ms. Hopkins have kept their requested rates in line with rates they charge in their locality of Dallas, Texas, and have not increased their requested rates despite the fact that this case is venued in the Central District of California.

19

NOTICE OF MOTION & MOTION FOR FEES, COSTS, AND INCENTIVE PAYMENT

have extensive wage and hour class action experience, having defended numerous wage and hour class actions on behalf of multi-national employers in addition to having been appointed as Class Counsel in dozens of matters in both state and federal courts. Haines Decl., ¶¶ 3-7; Korobkin Decl., ¶¶ 2-4; Crouch Decl., ¶¶ 6-8.

In addition, Mr. Haines was recognized by Thomson Reuters as a Southern California "Rising Star" in 2015, 2016, and 2017, an honor awarded to no more than 2.5% of attorneys under the age of forty in Southern California each year, and was selected as a Southern California "Super Lawyer" for 2018, an honor awarded to no more than 5% of all attorneys in Southern California each year. Haines Decl., ¶ 8. Mr. Crouch is Board certified in Labor & Employment Law by the Texas Board of Legal Specialization. Crouch Decl., ¶ 35.  Class Counsel's extensive experience is a further justification for their requested hourly rates.

Class Counsel's requested hourly rates are also reasonable pursuant to the *Laffey* matrix, which has been utilized in this and other California district courts as "a widely recognized compilation of attorney and paralegal rate data." *Fernandez*, *supra*, 2008 WL 8150856 at *14 (citing *In re Chiron Corp. Sec. Litig.*, Case No. C-04-4293-VRW, 2007 WL 4249902 at *6 (N.D. Cal. Nov. 30, 2007)); *see also Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*, 731 F.Supp.2d 937, 948 (N.D. Cal. 2010).  As the court noted in *Theme Promotions*, "[t]he rates posted in the *Laffey* matrix are tailored for the District of Columbia, which has a different cost of living index" from the Los Angeles area. Therefore, "to adjust the rates for the relevant legal market, the court will use the federal locality pay differentials based on federally compiled cost of living data." *Id.* (citing *In re HPL Tech., Inc. Sec. Litig.*, 366 F.Supp.2d 912, 921 (N.D. Cal. 2005)); *see also Fernandez*, 2008 WL 8150856 at *14 (recognizing that "where use of the *Laffey* matrix has been disapproved [in the Central District], it has been because it produced a rate that the court determined was *too low*" (emphasis in original).)

However, even without adjusting the *Laffey* matrix figures upwards to account for the higher cost of living in this District, the *Laffey* matrix demonstrates that Class Counsel's requested hourly rates are reasonable. The current *Laffey* matrix lists hourly rates of $636 for attorneys in their 8th to 10th years out of law school, $717 for attorneys in their 11th to 19th years out of law school, $864 for attorneys 20+ years out of law school, and $196 for paralegals. *See* Haines Decl., Exh. C.  Class Counsel's requested hourly rates fall well below these rates.

### c.  <u>The Lodestar Multiplier of 1.4 is Reasonable.</u>

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischell v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).  In the Ninth Circuit, a lodestar amount is "routinely enhanced…to reflect the risk of non-payment in common fund cases."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300.

In this case, and based on the hourly rates discussed above, Class Counsel's lodestar is approximately $278,392.50.  Below is a summary of the hours worked by the attorneys and paralegals in this case, including expected future hours:

| Name | Rate | Hours | Lodestar |
|---|---|---|---|
| Paul K. Haines | $600 | 176.7 | $106,020.00 |
| Tuvia Korobkin | $500 | 192.3 | $96,150.00 |
| John H. Crouch | $350 | 206.0 | $72,100.00 |
| Christine A. Hopkins | $300 | 2.8 | $840.00 |
| Paralegals (HLG) | $175 | 15.2 | $2,660.00 |
| Paralegals (Kilgore) | $75 | 8.3 | $622.50 |
| **Total Lodestar** | | | **$278,392.50** |

Therefore, the 25% "benchmark" requested fee award ($400,000) amounts to a multiplier of approximately 1.4.  *See, e.g., Vizcaino, supra,* 290 F.3d at 1051, n.6 (finding that multipliers ranging from 1.0 to 4.0 are frequently awarded in common

fund cases, with slightly over half of the cases surveyed awarding positive multipliers in the 1.5 to 3.0 range); *Garner v. State Farm Mut. Auto. Ins. Co.*, Case No. CV 08 1365 CW, 2010 WL 1687829 at *2 (N.D. Cal. Apr. 22, 2010) ("Class Counsel effectively seek a multiplier of less than 2. This is well within the range of multipliers applied in common fund cases…"); *Craft*, *supra*, 624 F. Supp. 2d at 1125 (awarding multiplier of 5.2 and collecting cases with cross-check multipliers ranging from 4.5 to 19.6); *Morgret v. Applus Tech., Inc.*, Case No. 1:13-cv-01801-JLT, 2015 WL 3466389 at *17 (E.D. Cal. Jun. 1, 2015) (awarding multiplier of 3.9, "which is within the range typically awarded in the Ninth Circuit."); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 277 (C.D. Cal. Dec. 29, 2014) (Thurston, J.) (awarding multiplier of about 3.6).

Moreover, Class Counsel submit that to the extent their lodestar is lower than the requested fee amount, they should not be penalized for facilitating an early settlement that provides substantial monetary relief to Class Members.  As the Ninth Circuit explained in *Vizcaino*, *supra*:

> We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief. The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."

290 F.3d at n.5; *see also In Re Activision Sec. Litig.*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989) (noting that "[w]here attorneys must depend on a lodestar approach there is little incentive to arrive at an early settlement.")

## IV.   PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE

Class Counsel and Plaintiffs also seek $12,357.75 in out-of-pocket costs reasonably incurred in litigating this matter.  Haines Decl., ¶ 15 & Exh. B; Crouch Decl., ¶¶ 30, 34. The costs Plaintiffs seeks to recover are the types of costs that are

routinely approved by California federal courts.[5]  Moreover, not a single Class Member has filed an objection to the Settlement, including Class Counsel's request for up to $20,000 for reimbursement of costs (although Class Counsel is only seeking actual costs expended of $12,357.75). Nguyen Decl., ¶ 15.  Because Class Counsel's litigation expenses were reasonably incurred, and no Class Member has objected to them, the Court should grant Plaintiffs' costs request.

## V.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE PAYMENTS

Class Representatives Rainoldo Gooding and Nadeen Gooding each request a $5,000 incentive payment.  In *Gentry v. Superior Court*, the California Supreme Court acknowledged that employees are frequently hesitant to seek legal redress for even meritorious claims, noting that "retaliation against employees for asserting statutory rights under the [California] Labor Code is widespread," and, thus, "fear of retaliation for individual suits against an employer is a justification for class certification in the area of employment litigation." 42 Cal.4th 443, 460 (2007). Incentive payments are therefore necessary to incentivize employees to report violations and vindicate their and their fellow employees' rights.  Indeed, "it is the intent of the Legislature in section 1194 that minimum wage and overtime laws should be enforced in part by private action brought by aggrieved employees." *Gentry*, 42 Cal.4th at 455.

Here, Plaintiffs expended a considerable amount of time assisting Class Counsel and pushing this case forward.  Their efforts included gathering and

---

[5] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client"); *see also Ashker v. Sayre*, Case No. 05-3759 CW, 2011 WL 825713 at * 3 (N.D. Cal. Mar. 7, 2011) ("The costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (legal research costs reimbursable); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and federal express costs reimbursable).

23

organizing hundreds of relevant documents and producing them to Class Counsel; remaining in constant contact with Class Counsel via in-person meetings, telephone, and e-mail; and identifying and communicating with potential witnesses. R. Gooding Decl., ¶¶ 41-44; N. Gooding Decl., ¶¶ 40-43. Plaintiffs each estimate they have spent more than 40 hours assisting in this litigation. *Id.* Moreover, by their participation in this lawsuit, Plaintiffs exposed themselves to risk of retaliation by current and potential future employers who may learn of the lawsuit, as class action lawsuits are often publicized on websites such as law360.com, lawyersandsettlements.com, and other media outlets. Indeed, if one performs a Google search of "Rainoldo Gooding" or "Nadeen Gooding," one of the search results on the first page of results pertains to this lawsuit.

The requested amount for Plaintiffs' incentive payments ($5,000) is also reasonable. "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, Case No. CV 16-3347 BRO (GJSx), 2017 WL 708766 at *19 (C.D. Cal. Feb. 16, 2017) (O'Connell, J.). Moreover, each incentive payment constitutes just 0.3% of the $1,600,000 common fund, further demonstrating its reasonableness. *See, e.g., Ross v. U.S. Bank Nat'l Ass'n*, Case No. C 07-2951 SI, 2010 WL 3833922 at *3 (N.D. Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000, based on their contributions to litigation and the risk that being a class representative would harm their reputation); *Thieriot*, *supra*, 2011 WL 1522385 at *1 (approving $25,000 incentive payment constituting 1.8% of gross settlement fund); *Alvarado v. Nederend*, Case No. 1:08-cv-1099 OWW DLB, 2011 WL 90228 at *5 (E.D. Cal. Jan. 11, 2011) (finding $7,500 incentive award to each of the five representatives to be reasonable where the gross settlement amounted to $505,058.60). For these reasons, Plaintiffs and Class Counsel respectfully request that the Court grant the requested incentive payments.

///

## VI.    <u>THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED</u>.

The $20,000 requested on behalf of CPT Group, Inc. ("CPT") for its services as settlement administrator is also fair, reasonable, and adequate. Without CPT's work on this case, Class Members would not have received notice of the Settlement, nor would they receive their Individual Settlement Payments. The work performed (and to be performed) by CPT in administration of this Settlement includes, but is not limited to: (i) providing notice via U.S. Mail to Settlement Class members; (ii) setting up a toll-free telephone number for Class Members to call with questions; (iii) setting up a Settlement website for posting relevant documents and submission of FLSA Opt-In Forms; (iv) calculating each Class Member's Individual Settlement Payment; (v) tracing Class Members' addresses and re-mailing Notice Packets when necessary; (vi) reviewing and processing any disputes, exclusions, or objections from Class Members; (vii) sending reminder e-mails to FLSA Class Members who had not yet opted-in; (viii) providing regular reports to Counsel as to the status of the Notice process; and (ix) distributing the Settlement funds. *See* Nguyen Decl., ¶¶ 2-12. Given the amount of work performed by CPT in connection with the Settlement, the size of the Settlement and the Class, and the necessity of its work to the successful administration of the Settlement and payment to the Class, the $20,000 sought for CPT is reasonable.

## VII.   <u>CONCLUSION</u>

For all of the above reasons, Plaintiffs respectfully request that the Court grant the requests of $400,000 for attorneys' fees, $12,357.75 for litigation costs, $5,000 incentive payments to each of the Class Representatives, and $20,000 in administration costs to CPT.

Dated:  November 17, 2017

Respectfully submitted,
HAINES LAW GROUP, APC

By:    <u>  /s/Paul K. Haines  </u>
Paul K. Haines, Esq.
Attorneys for Plaintiffs, the
Classes, and Aggrieved Employees