**O**

# United States District Court
# Central District of California

| | |
|---|---|
| RAINOLDO GOODING and NADEEN GOODING, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>VITA-MIX CORPORATION and KELLY SERVICES, INC.,<br><br>      Defendants | Case No. 2:16-cv-03898-ODW(JEMx)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT [66] AND MOTION FOR ATTORNEYS' FEES [65]** |

## I. INTRODUCTION

This is a wage-and-hour class action suit against Defendants Vita-Mix Corporation ("Vita-Mix") and Kelly Services, Inc. ("Kelly Services") (collectively, "Defendants"). Named Plaintiffs and proposed class members work for, or worked in the past for, Vita-Mix, and they allege that Vita-Mix misclassified their employee designations and failed to pay them overtime wages and other benefits. (*See generally* Compl., ECF No. 1.) In 2017, the parties reached a settlement on behalf of the class, and the Court preliminarily approved the settlement and certified the class. (Order, ECF No. 59.) Plaintiffs now move for final approval of the class settlement, and attorney's fees, among other costs. (ECF Nos. 65, 66.) Defendants do not oppose, and no class members submitted written objections. (ECF Nos. 67, 68.) At the hearing, Randall Pittman appeared in person and objected to the settlement. For the reasons discussed below, the Court **OVERRULES** Pittman's objection, **GRANTS** the

motion for final approval, and **GRANTS** the motion for attorneys' fees. (ECF Nos. 65, 66.)

## II. BACKGROUND & PROCEDURAL HISTORY

The Court previously set forth the factual background, class definitions, and settlement terms in its Order preliminarily approving the settlement, and incorporates that discussion here by reference. (Order, ECF No. 59.) Below, the Court addresses matters that have changed, or that were not addressed in the Court's preliminary approval order.

### A. First Amended Complaint

As part of its Order preliminarily approving the settlement, the Court granted Plaintiffs leave to file a First Amended Complaint ("FAC"). (Order 6–7, ECF No. 59.) In their FAC, Plaintiffs allege claims under the California Labor Code, the Fair Labor Standards Act ("FLSA"), the Private Attorneys General Act ("PAGA"), and the California Business and Professional Code.[1]

### B. Settlement Terms

The parties originally estimated that there were 1,150 members in the proposed class (across all three sub-classes). The finalized mailing list contained 1,055 class members, including 857 Rule 23 class members and 198 FLSA class members. (Decl. Tin Nguyen ("Nguyen Decl.") ¶ 5, ECF No. 65-4.) And, after addressing opt-outs and FLSA opt-ins, there are 952 total participating class members, including 97 FLSA members, and 855 Rule 23 members. (Supp. Decl. Tarus Dancy ("Supp. Dancy Decl.") ¶¶ 8–9, ECF No. 66-2.) The Court addresses the notice process in more detail below.

---

[1] The specific causes of action are: failure to pay overtime wages (under various state laws); FLSA violations (29 U.S.C. §§ 201 *et seq.*); minimum wage violations (under various state laws); meal period violations (Cal. Labor Code §§ 226.7, 512, 558); rest period violations (Cal. Labor Code §§ 226.7, 516, 558); waiting time penalties (Cal. Labor Code §§ 201–203); unlawful deductions (Cal. Labor Code § 221, *et seq.*); wage statement penalties (Cal. Labor Code § 226, *et seq.*); civil penalties under PAGA (Cal. Labor Code § 2698, *et seq.*); and unfair competition (Cal Bus. & Prof. Code §§ 17200, *et seq.*). (*See generally* First Am. Compl., ECF No. 64.)

2

### 1. Settlement Fund

The parties' settlement provides for a maximum, non-reversionary settlement amount of $1,600,000 to resolve Plaintiffs' claims on a class and collective basis. The "non-reversionary" aspect of the settlement means that if portions of the amount designated for costs such as attorneys' fees and incentive awards aren't granted, the settlement amount will remain unchanged (meaning that more money would go to the class members). With fees and costs as requested, on average, class members will receive $1,155.46, which is about $200 more than originally estimated. (Supp. Dancy Decl. ¶ 9.) The highest payment to a single class member is estimated at $11,977.88. (*Id.*) The Court previously approved the method of calculation. (Order 11, ECF No. 59.)

### 2. Class Notice

The parties' Settlement Agreement outlines in detail how notice shall be given to potential class members. The parties proposed that the CPT Group, an experienced class action settlement administrator, oversee and administer the class settlement. (Settlement Agreement ("SA") ¶ 49, ECF No. 54-1.) Plaintiffs submitted two proposed Notices of Pending Class, Collective, and Representative Action Settlement: a Rule 23 Notice (to be sent to the California and Non-California sub-classes), and an FLSA Notice (to be sent to the FLSA sub-class). (*Id.* Exs. B-1 and B-2.) The Declaration of Tin Nguyen sets forth the notice process in detail:

(1) <u>Transmission of Information to Settlement Administrator</u>: Defendant Vita-Mix provided the settlement administrator (CPT Group) with a list of class members, including social security numbers.[2]

(2) <u>Mail</u>: The settlement administrator updated the address list using a National Change of Address search and mailed and e-mailed a notice packet to all class members. The Settlement Agreement also outlines methods for finding class members whose mail is returned as undeliverable. (Nguyen Decl. ¶¶ 5, 7, 9.)

---

[2] This information is readily available because class members worked for Vita-Mix and provided personal information to the company for purposes of employment.

(3) <u>Website</u>: Within this same time period, the settlement administrator set up an informational website containing the Settlement Agreement, Notice, and Claim Form. (*Id.* ¶ 8.)

(4) <u>Calculation of Payment</u>: The claims administrator calculated the individual settlement payments in accordance with the methodology discussed in the Settlement Agreement, and the Court's preliminary approval order, relating to the number of workweeks each class member worked for Defendants.

### 3. Requesting Exclusion and Objecting

The Settlement Agreement also provides procedures for requesting exclusion from and objecting to the class settlement. (*See id.* ¶¶ 70, 71.) It provides: "Any objection must be in writing and must be accompanied by any documentary or other evidence and any factual or legal arguments that the objecting Participating Class Member intends to rely upon in making the objection." (*Id.* ¶ 70.) Despite the direction that "objections must be in writing," the notice itself provides that "You may also appear at the Final Approval Hearing, either in person or through your own attorney." (Nguyen Decl. ¶¶ 7, 9, Exs. A, B, ECF No. 65-4.)

## III. CLASS CERTIFICATION

The Court previously found that the class merited certification, and nothing has changed since the Court conditionally certified the class. Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Next, the proposed class must meet at least one of the requirements of Rule 23(b)(3): (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and/or (2) a class action is "superior to other available methods for fairly and efficiently adjudicating the

4

controversy." Fed. R. Civ. P. 23(b)(3).

## A. Rule 23(a) Requirements

The proposed class meets all four of the Rule 23(a) requirements. First, the 855 confirmed class members represent a sufficiently numerous class. While no "exact numerical cut-off is required" for the numerosity requirement, "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Thus, this class easily meets the requirement.

Next, the claims of potential class members demonstrate common questions of fact and law. Issues across all sub-classes include: whether Defendants failed to pay class members overtime wages; whether Defendants failed to provide meal and rest breaks; etc. The named Plaintiffs in this action also meet the typicality requirement because their claims arise out of the same circumstances as those of the other class members. Finally, named Plaintiffs and their counsel satisfy the adequacy requirement for representing absent class members because counsel is experienced, and the class representatives have no discernable conflicts of interest. These findings are bolstered by the fact that there were no written objections to the settlement, (Supp. Dancy Decl. ¶¶ 5–6), and only one objection lodged at the hearing.

## B. Rule 23(b)(3) Requirements

The proposed class satisfies the requirement that it be "sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). All members in this relatively small class were subject to Defendants' policy of classifying Demonstrators/Sales Representatives as "exempt," and as such, Plaintiffs demonstrate that this common factor predominates over any individualized issues in this case. Second, class resolution is superior because of the similarity of claims and modes of proof. Therefore, the Court confirms its prior finding that this putative class warrants certification for settlement purposes.

# IV. ANALYSIS OF SETTLEMENT

The Court previously found that the settlement was fair, adequate, and reasonable in its preliminary approval order. (Order 3–6, ECF No. 59.) The Motion for Final Approval confirms the Court's preliminary finding that the terms were reasonable and that notice would satisfy due process.

## A. Settlement Terms

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," this Court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The settlement is appropriate when analyzing these factors because:

(1) Strength of Plaintiffs' Case:
   a. Defendants contend that they properly classified class members as exempt because most of their activities took place away from their place of business, at places like Costco. (Mot. for Final App. 5.) They also argue that class certification would be difficult absent settlement because the Ninth Circuit has previously rejected a similar theory of uniform misclassification of employees. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009).
   b. With respect to meal and rest breaks, Defendants contend that because class members typically worked at places like Costco, that it was incumbent upon them to schedule their own meal and rest breaks. (Mot. for Final App. 6.) This individualized work schedule would also preclude class certification, Defendants argue. (*Id.*)
   c. Defendants also contend that reductions of commissions from sales are not considered "deductions" of previously earned wages since they are a condition precedent to earning the commissions. Thus, they were not unlawful.
   d. Finally, Defendants argue they have strong defenses to the waiting time penalties and the penalties associated with Plaintiffs' PAGA claims

because Defendants thought they were adequately compensating the class. In this sense, Plaintiffs could not demonstrate the violations were willful. (*Id.* at 7–8.)
   e. Under these circumstances, Plaintiffs appear to be settling disputed claims, which favors approving the settlement. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).
(2) Risk/Expense of Litigation & Status of Proceedings: the parties engaged in significant informal discovery leading up to mediation. Without settlement, the cost of continuing to litigate this class action would be great because of continued discovery and motion practice. This factor weighs in favor of approving the settlement.
(3) Risk of Maintaining Class Action Status: as set forth above, Defendants contend there were individual issues that could have precluded certification.
(4) Amount of Settlement vs. Plaintiffs' Claims: $1.6 million is reasonable given the risk of continued litigation, and also taking into account the relatively high average payout per individual in excess of $1,000.
(5) Experience of Class Counsel: Class counsel present declarations supporting their fee motion establishing that they have decades of experience in prosecuting and defending employment class actions, and have been appointed class counsel on several other occasions. (Haines Decl. ISO Mot. for Atty. Fees ¶¶ 2-8, ECF No. 65-1; Korobkin Decl. ¶¶ 2–4, ECF No. 65-2; Crouch Decl. ¶¶ 5-7, 20-21, 36, ECF No. 65-3.) This also weighs in favor of approving the settlement.
(6) Presence of Government Participant: the California Labor & Workforce Development Agency ("CLWDA") is aware of this settlement and has not objected.
(7) Reaction of Class Members: only 2 Rule 23 class members opted out of the settlement, and there is only one objector, as described further below. (Supp. Dancy Decl. ¶¶ 6–7.)

On balance, these factors weigh in favor of approving the settlement under a Rule 23 analysis, and under the FLSA. *Rodriguez*, 563 F.3d at 963; *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353–54 (11th Cir. 1982) (holding that court may approve FLSA settlement where it determines that such a settlement is "a fair and reasonable resolution of a bond fide dispute over FLSA provisions.").

**B.** **Sufficiency of Notice**

In order to find that notice to absent class members is sufficient, the Court must analyze both the type and content of the notice.

**1.** **Type of Notice**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Ninth Circuit has approved individual notice to class members via e-mail. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). It has also approved notice via a combination of short-form and long-form settlement notices. *Id.*; *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving e-mail and postcard notice, each of which directed the class member to a long-form notice).

On September 26, 2017 and October 6, 2017, CPT mailed Rule 23 or FLSA Notice Packets to all 1,055 potential Class Members. (Nguyen Decl. ¶¶ 5, 7, 9 & Exs. A–B.) The mailing addresses contained in the class lists were processed and updated using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (*Id.* ¶ 6.)

In October 2017, CPT discovered that it had erroneously mailed FLSA Notices to 544 Rule 23 Class Members. On October 6, 2017, CPT mailed Rule 23 Notices to each of those Rule 23 Class Members, and extended their response deadline to December 5, 2017 (60 days from the October 6, 2017 mailing). (*Id.* ¶ 9.)

If a mailed Notice Packet was returned to CPT without a forwarding address, CPT performed a "skip trace" using Accurint, an address database. (Supp. Dancy Decl. ¶ 3.) As of December 20, 2017, CPT re-mailed a total of 197 Notice Packets as a result of new addresses located via "skip trace," forwarding addresses provided by the Post Office, or requests from Class Members. (*Id.* ¶ 4.) Only 9 Notice Packets were undeliverable. (*Id.*) However, each of these undeliverable Notice Packets was e-mailed to the respective Class Member at their last known e-mail address, provided

by Defendants. (*Id.*)

CPT also created a website for the purpose of allowing FLSA Class members to submit FLSA Opt-In Forms and allowing Class Members to view documents pertaining to the case, including the Settlement Agreement, Notices, and other documents, along with CPT's contact information. (*Id.* ¶ 8.) Accordingly, the Court finds this notice process satisfies due process.

### 2. Content of Notice

The Court previously analyzed and approved the notice. (Order 14, ECF No. 59.) Overall, the notice procedure and content are adequate, and do not preclude final approval of the settlement.

### C. Objector Randall Pittman

Federal Rule of Civil Procedures 23 provides that "any class member may object to the [settlement] proposal if it requires court approval…." Here, the class notice provided that class members could submit a written objection, or appear at the final approval hearing. (Nguyen Decl. ¶¶ 7, 9, Exs. A, B, ECF No. 65-4.) No written objections were filed. (Supp. Dancy Decl. ¶ 6.) At the hearing, Randall Pittman appeared, unrepresented, and claimed he was an employee of Kelly Services. Kelly Services is the staffing company that placed many of the absent class members with Vita-Mix for employment. (FAC ¶ 12.) However, Pittman admitted that he had never been placed with Vita-Mix, through Kelly Services.

Pittman objected because he claimed the amount of settlement funds being contributed to the CLWDA is not sufficient. He claims that the contribution is not large enough to allow him to use the services of the CLWDA in the future, at some undisclosed date. In response to questioning from the Court, Pittman confirmed that, while he was an employee of Kelly Services, he was never placed with Vita-Mix. Accordingly, Pittman is not a member of the class, or any of its sub-classes, which is limited to "covered positions." (Preliminary Approval Order 3, ECF No. 59.) A "covered position" includes the positions of Sales Representative or Demonstrator.

(*Id.*)  Pittman did not present any evidence or argument establishing that he is a member of the class, and thus, by the plain language of Rule 23, he does not have standing to assert his objection.  Fed. R. Civ. P. 23(e)(5) ("Any *class member* may object….") (emphasis added).

Even if Pittman were a class member, he provided no reason that the settlement is not fair, adequate, or reasonable.  His claim regarding the CLWDA is refuted by the fact that it receives a payment from the settlement fund in connection with Plaintiffs' PAGA claim, and that the CLWDA did not lodge any objection.  (Haines Decl. ¶ 31, ECF No. 54-1.)  Accordingly, the Court **OVERRULES** Pittman's objection on the grounds that he is not a member of the class, and thus does not have standing to challenge the settlement.

## V. MOTION FOR FEES, COSTS, INCENTIVE AWARDS, AND SETTLEMENT ADMINISTRATOR FEES

### A. Attorneys' Fees

Class counsel seeks 25% of the common settlement fund ($1.6 million), which totals $400,000.  "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *Id.* at 942.  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

In the Ninth Circuit, contingency fee recovery is typically in the range of 20% to 33 1/3 % of the total settlement value, with 25% considered a benchmark.  *See In re*

*Bluetooth*, 654 F.3d at 941.

> Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.

*Id.* at 942. Courts may also "cross-check" the percentage-of-the-fund approach under circumstances where the fees seem suspect. *See id.* at 944. Thus, under the percentage method, class counsel's fee request meets the benchmark. It is further justified by the discussion above regarding the strength of Plaintiffs' case, the challenges counsel faced in negotiating this settlement, and the fact that there is only one objector.

The Court also cross-checks the percentage method by applying the lodestar calculation. The lodestar method calculates a fee award by multiplying hours worked, by hourly rate, and typically provides a multiplier that takes into account risk endured by class counsel. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Here, class counsel submits declarations that establish:

| Name | Rate[3] | Hours | Lodestar |
|---|---|---|---|
| Paul K. Haines | $600 | 176.7 | $106,020.00 |
| Tuvia Korobkin | $500 | 192.3 | $96,150.00 |
| John H. Crouch | $350 | 206.0 | $72,100.00 |
| Christine A. Hopkins | $300 | 2.8 | $840.00 |
| Paralegals (HLG) | $175 | 15.2 | $2,660.00 |
| Paralegals | $75 | 8.3 | $622.50 |

---

[3] There are rate differences between Crouch and Haines, who have relatively similar experience, and tenure. Class counsel explains that the rate differential is due to the market rates in their respective geographic locations.

11

| | | | |
|---|---|---|---|
| (Kilgore) | | | |
| | **Totals** | **601.3** | **$278,392.50** |

(Haines Decl. ¶¶ 10–13; Crouch Decl. ¶¶ 29, 34; Korobkin Decl. ¶¶ 5–6.)

### 1. Hours

The approximately 600 hours spent by class counsel reaching this settlement included: researching and drafting motions for preliminary and final approval and motion for fees, drafting stipulations and proposed orders, overseeing the notice process and interacting with class members who had questions, reviewing Court orders and filing the First Amended Complaint, analyzing class-wide data provided by Defendants to create a damages model to use at mediation, negotiating settlement and participating in, and preparing for, mediation, and discussing case strategy with co-counsel. (Haines Decl. ¶ 14.)

"[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting ... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (quoting *Covillo v. Specialtys Cafe*, No. C–11–00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014)). Here, class counsel's declarations set forth the details of how they spent their time, and the tasks all seem reasonably necessary. The tasks do not indicate that the work was duplicative, either. Accordingly, while the number of hours may be a bit high given the relatively quick settlement, the Court cannot find that they are unreasonable, especially when being used as a cross-check for the percentage method of fee calculation.

### 2. Rate & Lodestar Multiplier

In evaluating rates, courts take into account the reasonable rates for the specific geographic area and type of practice. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). Here, class counsel sets forth several opinions from courts in this district awarding them fees at the rates requested here. *See, e.g.*, *Prado v. Warehouse Demo Servs., Inc.*, No. CV14–3170 JFW (Ex), ECF Nos. 141, 143

(C.D. Cal. 2015). Thus, these rates appear reasonable.

Courts typically award a multiplier in a lodestar calculation that takes into account the risk contingency fee attorneys endure. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."). Here, the lodestar multiplier is approximately 1.4 ($278,392.50 x 1.44 = $400,885.20). The Ninth Circuit routinely upholds higher lodestar multipliers. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (upholding multiplier of 3.65, and noting that range between 1 and 4 is typically appropriate). Accordingly, taking into account the potential risk, and the amount of work expended by class counsel, the Court awards the 25% contingency fee, which is also confirmed as appropriate by the lodestar cross-check.

**B.     Litigation Expenses & Settlement Administrator Fees**

Class counsel seeks approximately $12,000 in litigation expenses, and an award of $20,000 to the settlement administrator. (Mot. for Atty. Fees 22.) Class counsel's litigation fees appear reasonable in relation to the settlement amount, and included mediation fees, copying costs, travel expenses, filing and messenger fees, and research. (*Id.* at 22–23.) The reasonableness of the costs are further confirmed by the fact that the only objector did not address these costs, and that class counsel initially requested up to $20,000 for reimbursement of costs. (Nguyen Decl. ¶ 15.)

The settlement administrator's fee of $20,000 on a $1.6 million settlement also appears reasonable. After deducting all fees, costs, and incentive awards, the common fund for the class still exceeds $1 million. (Mot. for Atty. Fees 4.)

**C.     Incentive Awards**

Class counsel requests an incentive award of $5,000 for each class representative. (*Id.* at 23.) Each class representative estimates that they spent in excess of 40 hours meeting with class counsel and assisting in the litigation. (R. Gooding Decl. ¶¶ 41–44, N. Gooding Decl. ¶¶ 40–43.) "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle,*

*Inc.*, No. CV 16–03347 BRO (GJXx), 2017 WL 708766, at *18 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Accordingly, the Court approves this incentive award.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' motion for final approval. (ECF No. 66.) The also Court **OVERRULES** Pittman's objection, and **GRANTS** Plaintiffs' motion for attorneys' fees. (ECF No. 65.) Within seven days of this Order being docketed, class counsel shall submit a revised proposed final judgment consistent with this Order, and addressing Pittman's overruled objection.

**IT IS SO ORDERED.**

January 25, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**